# 846

WRIGHT v. DAVIS, Judge.

No. 11991. NOVEMBER 11, 1937.

Frank A. Bowers, for movant.

John A. Boykin, solicitor-general, J. W. LeCraw, and E. A. Stephens, for respondent.

BELL, Justice. Will Wright was convicted of the offense of rape and sentenced to electrocution. He filed a motion for a new trial, which the court overruled, and the judgment was affirmed by this court on March 10, 1937. Wright v. State, 184 Ga. 62 (190 S. E. 663). On June 10, 1937, he presented to the judge of the superior court an extraordinary motion for new trial, and on June 21 offered an amendment thereto, at which time the judge refused to allow either the motion or the amendment filed, and refused to grant a new trial as prayed. Thereafter, within due time, the movant presented a bill of exceptions complaining of the action of the court in reference to such proceedings. The judge having refused to certify the bill of exceptions, the movant filed in this court a petition for the writ of mandamus to compel him to

do so. On this petition a mandamus nisi and supersedeas were ordered. The judge has made response, and the question now before this court is whether the mandamus should be made absolute.

The grounds of the extraordinary motion for new trial relate to the alleged disqualification of one who served as a juror. The petition for the writ of mandamus and the exhibits attached thereto disclose the following facts: In the selection of a jury to try the accused a person answering to the name of J. B. Nabors was accepted both by the State and the accused, and served as a member of the jury which returned the verdict against the accused. There were two persons of this name residing in the county where the trial was had, to wit, J. B. Nabors Sr., and J. B. Nabors Jr., being father and son. The name of the former is in the jury-box, and for aught that appears he would have been a competent juror. Before the trial of the instant case, J. B. Nabors Jr. had been twice convicted of the offense of larceny of an automobile, and had served in the penitentiary for such offenses. His name was not in the jury-box; and for all of these reasons he was incompetent to serve as a juror. J. B. Nabors Sr., at the time of the trial, was an employee of the Southern Railway Company, and had been for several years. He had received a summons to serve as a juror at this term of the court, but on the suggestion of his son he permitted the son to answer the summons and serve in his stead. When the name "J. B. Nabors" was called, the son responded, and in reply to inquiry then made in open court falsely replied "that he was employed by the Southern Railway." It appears that he was about 30 or 35 years of age. Before the trial of this case, he told an acquaintance that he was serving on the jury on his father's summons, and invited such acquaintance to "come to the court and see him." The grounds of the extraordinary motion are summarized in the amendment thereto, as follows: "Movant avers that J. B. Nabors, who sat as a juror at the trial of movant, perpetrated a fraud upon this court and upon movant by actually personating and posing as his father, J. B. Nabors Sr., an honest and upright citizen of Fulton County, Georgia, and a qualified juror of said county, whereas said J. B. Nabors who sat as a juror in movant's trial was actually J. B. Nabors Jr., an ex-convict, a man who had previously pleaded guilty to two indictments of larceny of an automobile, endured

sentences on each of said indictments, and who had a pending untried indictment charging him with larceny of an automobile, against him, at the time of movant's trial and at the present time, a man who has been six times indicted by the grand jury of this county for infamous felonies, and anything but an honest and upright citizen and a qualified trial juror. That by reason of such fraudulent personation on the part of J. B. Nabors Jr., when he was put upon movant as a prospective trial juror at movant's trial, no reasonable degree of diligence on the part of movant or any or all of his counsel could have detected the fraud inflicted upon this movant by said J. B. Nabors Jr."

The previous convictions of J. B. Nabors Jr., of the offense of larceny as alleged, were established by records of the superior court of Fulton County. Neither the movant nor any of his attorneys knew of the foregoing facts as to fraud and impersonation on the part of J. B. Nabors Jr., or as to his previous conviction of larceny, until some time in June, 1937, after the conviction of movant and the affirmance of the judgment overruling his original motion for a new trial; nor could any of such facts have been discovered sooner by the exercise of ordinary diligence on the part of movant or any of his attorneys. The bill of exceptions, which it is alleged the judge refused to certify, contained the following: "Be it further remembered, that on the 11th day of June, 1937, the defendant presented to the said trial judge, Hon. James C. Davis, an extraordinary motion for a new trial, and on the 21st day of June, 1937, the defendant presented to said Hon. James C. Davis an amendment to said extraordinary motion for a new trial, at which time the said trial judge refused to allow said extraordinary motion for a new trial and the amendment thereto, and refused to hear newly discovered evidence as set out in said extraordinary motion for a new trial and the amendment thereto, and refused to grant the defendant a new trial thereon. To this action of the said trial judge in refusing to allow defendant's extraordinary motion for a new trial and the amendment thereto, and in refusing to allow the filing of same, and in refusing to hear testimony in the form of newly discovered evidence as set out in said extraordinary motion for a new trial and the amendment thereto, and in refusing to grant the defendant a new trial thereon, the defendant excepted then and there, and now

excepts, and says that the said trial judge should have allowed said extraordinary motion for a new trial, and should have allowed said amendment thereto, and should have allowed both of the same to have been filed, and should have heard testimony in the form of newly discovered evidence as set out therein, and should have granted the defendant a new trial on each and every ground therein taken and set out."

The following is a copy of the material portions of the response filed by the judge: "The extraordinary motion for a new trial in this case was presented to respondent on June 11, 1937, at 9:00 o'clock, a. m., about one hour before the defendant was scheduled to be electrocuted in Milledgeville. A new trial could not have been granted on said motion without a hearing upon the question involved, nor could the motion have been denied at that time for the same reason. A denial of the motion at that time would have meant the electrocution of the prisoner, inasmuch as there was no time at that late moment for preparation of bills of exceptions, and a stay of execution by the Supreme Court. Desiring to preserve the status quo until the questions presented could be heard and determined, respondent therefore immediately telephoned the Governor's office and requested a stay of execution, which stay was granted by the Governor. Respondent thereafter set the matter down for presentation on June 21, 1937. Respondent studied the legal question himself, and on June 21, 1937, heard legal arguments at considerable length from counsel representing the petitioner and from the solicitor-general representing the State. As a result of this study and legal argument, respondent reached the conclusion that the state of facts presented by the petitioner in his pleadings did not present such an extraordinary situation as the law contemplates should be ground for the grant of a new trial upon an extraordinary motion made long after the term of trial had expired and made after a first motion for new trial had been considered, overruled, and that judgment affirmed by the Supreme Court of Georgia. Respondent accordingly announced his decision refusing to grant the rule nisi upon the extraordinary motion. And on a subsequent day respondent fixed a new date for the imposition of the death penalty upon the said petitioner. With reference to the 'amendment' referred to in the petition for mandamus, respondent certifies that

while this was never formally tendered or handed to respondent, and respondent never read or inspected it, nevertheless, in the course of his argument on June 21, in favor of the issuance of the rule nisi, counsel for petitioner stated that he had an amendment to his extraordinary motion for new trial, and that the same contained additional matter which was referred to by said counsel for the petitioner, in his argument. Respondent can not recall that counsel for petitioner set forth any additional contentions of law as being contained in said amendment, or that counsel expounded or referred to any provisions of the constitution of the United States as being invoked in said proposed amendment. However, if such point or points had been presented to respondent in said argument, it would not have altered the conclusion which respondent reached in declining to issue a rule nisi upon said extraordinary motion. Respondent believes that his decision was correct, and that no violation of the constitution of the United States or of the constitution of Georgia is shown by the pleadings in this case, attached and embodied in the petition for mandamus, and that the rule nisi was properly denied by respondent in this case, regardless of whether the 'amendment' is considered as being properly before respondent at the time of said hearing or not." The movant contended that his conviction in the circumstances had deprived him of certain constitutional guaranties,—a fact which will explain the references made by the judge to constitutional questions.

Some question has been raised by the solicitor-general as to the sufficiency of the affidavits to show reasonable diligence; but on consideration of all of the facts as shown in the several affidavits and in other portions of the record, we are satisfied that the motion should not have been denied because of any lack of diligence on the part of the movant or his attorneys. Section 6-910 of the Code, relating to mandamus in cases of this kind, provides in effect that if the reasons given by the judge shall be insufficient, the appellate court shall issue a mandamus absolute. The answer filed by the judge in this case does not respond categorically to the several allegations contained in the petition, but seems to concede the truth of substantially every material allegation of fact. As we construe the petition and the answer, the only question for determination is whether the reasons given by the judge

for refusing to certify the bill of exceptions are sufficient in law; and the answer to this question will depend upon the facts relating to the disqualification of the "juror," J. B. Nabors Jr. On a petition for mandamus to compel a judge to certify a bill of exceptions, the merits of the assignments of error will not be considered if it is the first bill of exceptions after verdict. But where the losing party seeks to compel a judge to sign a second bill of exceptions assigning error on the refusal of an extraordinary motion for a new trial, this court will inquire into the grounds of such motion, and will grant a mandamus absolute only in case the motion appears to be meritorious. *DuPre* v. *Humphries,* 153 *Ga.* 884 (113 S. E. 204).

In the instant case we are of the opinion that the extraordinary motion for a new trial and the proffered amendment presented a state of facts which, standing without dispute, required as a matter of law that a new trial should be granted. It has been held many times that the fact that a juror's name is not in the jury-box or on the jury-list is not cause for a new trial when the point is raised for the first time after verdict. Such a disqualification is ground only for a challenge propter defectum, which must be made before verdict; and unless a challenge is so made, the incompetency of the juror is not cause for a new trial, no matter when it is discovered. *Jordan* v. *State,* 119 *Ga.* 443 (3-6) (46 S. E. 679); *Embry* v. *State,* 138 *Ga.* 464 (75 S. E. 604); *Taylor* v. *Warren,* 175 *Ga.* 800 (3) (166 S. E. 225). Whether or not the same strict rule should be applied where a person whose name is not in the jury-box obtains a place on the jury by fraudulently impersonating another, is a question which apparently has never been decided by this court, and is one which need not now be decided. The record in the case at bar relates to a matter of far greater importance, and we should of course deal with the case according to the facts presented. J. B. Nabors Jr. was not a juror in any sense of the term, although for convenience we may refer to him as such, in this opinion. It appears from the record that he was not merely wanting in some statutory qualification, but that he had been twice convicted of the offense of larceny of an automobile, and was thus fundamentally disqualified to serve as a juror. In *Williams* v. *State,* 12 *Ga. App.* 337 (77 S. E. 189), it was said: "There is no right to which Anglo-Saxons more tena-

ciously cling than the right of jury trial. There is certainly no right which should be considered more sacred, because upon the maintenance of this right depends the assertion or defense of every other right which ' the .citizen enjoys. The constitution of the State declares that the right of trial by jury 'shall remain inviolate' (Civil Code, § 6545). This provision, in substantially the same form, is to be found in every constitution of this State. The statement of the constitution, that the right of trial by jury shall remain inviolate, refers to the right as it existed at common law at the time of the incorporation of this provision into our constitution; and consequently the expression means that the right of trial as it existed in England should be inviolate or unaltered. At common law, one who was found guilty of larceny was 'infamous,' and by reason of that infamy he was disqualified from jury service. It must follow, therefore, that in the absence of any provision in our organic law affecting the right of jury trial, a jury trial in Georgia, to be valid, must be governed by the same rules as prevailed in England at the time we adopted our constitution. And as at common law one accused of crime was entitled to a trial by twelve upright men, so likewise it is essential that one accused of crime shall in Georgia be accorded a trial before twelve men, upright and intelligent, if the right is to be preserved inviolate." A new trial was ordered in that case, although it did not appear that there was any fraud or deception on the part of the disqualified juror. While it appears that some courts have classed such a disqualification as one propter defectum (Goad v. State, 106 Tenn. 175, 61 S. W. 79; Queenan v. Territory, 11 Okla. 261, 71 Pac. 218, 61 L. R. A. 324; State v. Powers, 10 Ore. 145, 45 Am. R. 138; Busey v. State, 85 Md. 115, 36 Atl. 257; Strang v. United States, 53 Fed. (2d) 820), this is not to our minds a sufficient classification. According to the Supreme Court of North Carolina, one who has been convicted of such an offense is subject to a challenge "propter delictum," which is materially different from an objection propter defectum. State v. Levy, 187 N. C. 581 (122 S. E. 386); Butler v. Greensboro Fire &c. Co., 196 N. C. 203 (145 S. E. 3). We are of the opinion that this is a correct classification, and that previous decisions by this court in relation to disqualifications propter defectum are not in point.

It is argued for the State that the defect in this juror could

have had no bearing upon his ability to decide the case impartially, and that it does not appear that the accused was injured. The verdict itself shows that the defendant was not benefited, as he received the extreme penalty, and it is clear that he was deprived of his right to have a jury composed entirely of upright men. Code, §§ 2-4502, 59-106. It will not do to speculate on whether the accused suffered actual injury, when so vital a right has been violated. There are some conditions from which injury will be presumed. When the facts are properly compared, the decision in *Jordan* v. *State,* supra, is not contrary. The solicitor-general has requested that we overrule or disapprove the decision in *Williams* v. *State,* supra. We are of the opinion that the decision is sound so far as it applies to the question here under consideration; and therefore the request is denied. It follows that the bill of exceptions presented a meritorious case for a writ of error, and that the same should have been certified.

*Mandamus absolute granted. All the Justices concur.*

JENKINS, Justice, concurring specially. While I think the trial judge was correct in construing the disqualification of the juror as being one propter defectum, and while under the ordinary rule such a disqualification would not be ground for the grant of a new trial, I agree with the conclusion arrived at by my associates, for the reason that I do not think the ordinary rule should apply where it is made to appear, as it does here, that the service of the juror was brought about, not merely by ignorance of the defendant and his counsel, but by the fraud of the juror perpetrated on the court and the defendant, unmixed with any negligence on the part of the defendant or of his attorneys.