30005. MITCHELL *v.* THE STATE.

DECIDED MAY 22, 1943. REHEARING DENIED JULY 28, 1943.

*T. J. Lewis,* for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye,* contra.

MacIntyre, J. ■ The pressure in the case is on the question whether the defendant broke and entered the front door of the house alleged to have been burglarized. The evidence authorized the jury to find that the front door was closed when the alleged victim arrived at her home at about eleven o'clock p. m., and that she thereupon entered, closed and latched the front door. And, when discovered in the house about 1:00 a. m. the defendant hurriedly left through the front door which was standing wide open and that the screen door was propped open, so that if necessary he would have an unimpeded way of exit and could leave hurriedly. There is no suggestion from the evidence or the defendant's statement, he having pleaded an alibi, that any other person living in said house left or entered the house after the alleged victim had returned to her home, latched the front door, and gone to bed, or that the defendant had gone into the house through an open door or window, and later opened the front door in order to facilitate his escape if necessary. We think the facts proved authorize a legitimate inference that the door in question was closed and fastened and that the defendant broke and entered. And the mere possibility or conjecture that the defendant entered through an open aperture and broke out of the house rather than that he broke in, does not overcome or destroy the legitimate inference that he broke and entered. *Humphries* v. *State,* 149 *Ga.* 480 (100 S. E. 637); *Hicks* v. *State,* 66 *Ga. App.* 577 (18 S. E. 2d, 637); State *v.* Warford, 106 Mo. 55 (16 S. W. 886, 27 Am. St. R. 322); Willis *v.* State, 33 Tex. Cr. 168 (25 S. W. 1119).

The verdict finding the defendant guilty of burglary under an indictment charging him with that offense in that the accused "did break and enter the dwelling house of [a named person], where valuable goods were contained, with intent to commit a felony, to wit, with intent to commit sodomy upon the person of" [a named female], was authorized by the evidence.

■ The exceptions in special grounds 1 and 2 are to excerpts from the charge. When these are considered in the light of their context and the charge as a whole the exceptions are not meritorious.

■ Challenges are, generally speaking, of two sorts; challenges to the array and challenges to the poll. Challenges to the array go to the form and manner of making up the entire panel of jurors without regard to the objection to the individual jurors who compose it, while challenges to the poll are directed solely to the objection which is inherent in the individual juror. A challenge to the poll may be either 1, peremptory, or 2, for cause. The challenge for cause is in one or two forms: 1, for principal cause, or 2, to the favor. *Turner* v. *State,* 114 *Ga.* 421, 423 (40 S. E. 308). Thompson and Merriam on Juries, 135, § 153, says: "Lord Coke's classification of challenges to the polls is as follows. Primarily he divided them into four classes: 1. Peremptory; 2. Principal; 3. Which induce favor; 4. For default of hundredors. He subdivided the principal challenge as follows: 1. *Propter honoris respectum;* 2. *Propter defectum;* 3. *Propter affectum;* 4. *Propter delictum.* . . At this point we must note a defect of classification not uncommon in the writings of this learned commentator. Challenges *propter defectum* he subdivides into challenges for defect of country, freedom, freehold and *hundredors.* This last will be recognized as one of the main divisions of challenges to the polls. The climax of confusion is reached when the challenge *propter affectum* is subdivided into principal challenges and those to the favor. This unhappy arrangement is a matter of historical interest only. It causes no confusion in practice at the present time, since *the divisions previously indicated* [italics ours] have long since become recognized as sufficiently definite for purposes of practice." The italicized words, "divisions previously indicated," in so far as they related to a challenge for cause to the poll, the matter here under consideration, referred to challenges for cause which are divided into two classes by Thompson and Merriam on Juries: challenges for principal cause and challenges to favor. It might be noted that Judge Simmons, speaking for the court in *Turner* v. *State,* supra, states that this was the common-law classification, as does Thompson On Trials, 44, § 40, which states: "By a common-law classification, challenges for cause were divided into challenges for *principal cause,* and challenges *to the favor.* The chief importance of this distinction lay in the fact that the former were tried by the *court,* whose decision was *reviewable* on error, while the latter were tried before triors whose decision was conclusive." In this State the triors are the judges themselves.

Cyclopedic Law Dictionary (2d ed.), 154, states: "Challenge for cause was anciently divided into challenges; (i) For principal cause,—being for such cause as, if substantiated, was sufficient to show bias or disqualification. The grounds of principal challenge were *propter defectum,* for disability, as infancy or mental unsoundness; *propter affectum,* for partiality, as where the juror was of kin to the party, or bore some confidential relation to him; *propter delictum,* on account of crime committed by the juror whereby he was disqualified. 3. Bl. Com. 361. To these was sometimes added *propter honoris respectum,* from respect to a party's rank or nobility. (ii) To the favor,—those which are founded on reasonable ground to suspect that the jury is partial, though the cause be not so evident as to warrant a principal challenge."

A principal challenge to the poll is based on alleged facts from which, if proved to be true, the juror is conclusively presumed to be incapacitated to serve. Thus, the question principally raised, is one of law and is to be decided by the court. Such decision is subject to review. A challenge to favor is based on circumstances raising a suspicion of the existence of actual bias in the mind of the juror for or against the party, as for undue influence, or prejudice, which essentially raised a question of fact that under the common law was decided by triors (not the court), whose decision was final and conclusive; but under our system the court is substituted for the triors and the court's decision on a challenge to favor is likewise final and conclusive "as to the credibility of the proof." *Costley* v. *State,* 19 *Ga.* 614 (2). See, in this connection, *Cobb* v. *Atlanta Coach Co.,* 46 *Ga. App.* 633 (168 S. E. 126); *Turner* v. *State,* supra.

Thus, if the classification in the Cyclopedic Law Dictionary, supra, be correct, a juror may be objected to for partiality, by a challenge "for principal cause" or a challenge "to the favor." To illustrate: an opinion finally and fully made up and expressed, which the juror admits could not be changed by evidence, and nothing appearing to the contrary, would subject the juror to a challenge for principal cause; for the juror could be conclusively presumed from partiality to be incapacitated to serve as a matter of law. But an imperfect of hypothetical opinion, or one based only on rumor or report, which might or might not yield to the evidence in the case, under the rules of law given in the charge by

the court, would not be a cause for a principal challenge, for there would not be a conclusive presumption of law that the juror was disqualified; but the juror would be subject to a challenge for favor on account of partiality, and such challenge would raise the question of fact as to the competency of the juror which would be determined by the judge sitting as a trior.

Another question of importance is as to when the different challenges to the individual juror may be aptly made and when waived. In the words of the court in *Jordan* v. *State,* 119 *Ga.* 443, 445, (46 S. E. 679), a juror incompetent "is made specially competent by the act of the parties in allowing him to serve without challenge." In *Jordan* v. *State,* supra, and in *Wright* v. *Davis,* 184 *Ga.* 846 (193 S. E. 757), the question as to when the challenge for cause of a petit juror for defect propter defectum, propter affectum, and propter delictum is required to be made, otherwise they can not be made afterwards, is discussed. If in *Jordan* v. *State,* supra, Judge Lamar, speaking for the court, relatively to a petit juror, was not using the word "favor" in a restrictive sense so as to confine its meaning only to partiality such as is referred to in subdivision 2 of the classification of challenges for cause in Cyclopedic Law Dictionary, but on the contrary, was using the word "favor" in the general sense so as to include partiality such as is referred to in both subdivisions 1 and 2 in the classification of challenges for cause in the Cyclopedic Law Dictionary, then in that event the Cyclopedic Law Dictionary would be in accord with the statement in *Jordan* v. *State,* supra. The court, in that case, relatively to a petit juror, said: "Where the parties are ignorant of such defects *propter affectum,* the verdict may be set aside." But challenges *propter defectum* are not good reasons for the grant of a new trial where the parties allow the juror to serve without challenge. In *Wright* v. *Davis,* supra, Judge Bell, speaking for the court, in effect said that when the parties are ignorant of defects *propter delictum* of the petit juror, the verdict may be set aside.

There are frequent references by the Supreme Court and the Court of Appeals of this State to challenges propter defectum and propter affectum. So far as we are aware, the only time a challenge propter delictum is expressly referred to by that specific name in either of these courts is in *Wright* v. *Davis,* supra, where the court held that a juror who had been convicted of a crime

of moral turpitude, and had endured and submitted to the sentence, was subject to challenge propter delictum where such a challenge was duly and properly made. And in that case it was held that such a defect as to a petit juror was a ground for a motion for new trial, if the defendant was ignorant of it and had used due care. In *Wright* v. *Davis,* the court in effect said that we have in Georgia not only challenges for cause propter defectum and challenges propter affectum, but we also have challenges for cause propter delictum. This would seem to correspond with the Cyclopedic Law Dictionary, supra, if we note that a cause for a challenge propter honoris respectum (from respect to a party's rank or nobility) does not exist in the United States.

In the instant case we are only concerned as to whether the disqualification of a grand juror is subject to the objection propter delictum, which was not made until after verdict and was for the first time raised in the motion for new trial. The case of *Wright* v. *Davis,* supra, would be controlling if the juror in question had been a petit juror, but here there was no objection to the defect propter delictum to the grand juror until after trial and verdict. In United States *v.* Gale, 109 U. S. 65, 68, the following is quoted from 2 Hawkins, c. 25, § 27: "If a person who is tried upon such an indictment [where one of the grand jurors has been convicted of a crime involving moral turpitude] take no exception before his trial, it may be doubtful whether he may be allowed to take exception afterward, because he hath slipped the most proper time for it." Thereafter in the Gale case the court says: "In Bacon's Abridgment (Juries, A) it is said that the court need not admit of the plea of outlawry of an indictor unless he who pleads it have the record ready, or it be an outlawry of the same court; and it is added, as the better opinion, that no exception against an indictor is allowable, unless the party takes it before trial. Chitty lays down the same rule. 1 Crim. L. 307-8."

In *Mills* v. *State,* 57 *Ga.* 609, it is stated: "The fact that the name of one of the grand jury who found the true bill was not in the jury box from which jurors were drawn, is not good ground for arresting the judgment, or for a new trial, after verdict. The objection should be made before the case is submitted to the jury." In *Hall* v. *State,* supra, it was said: "In this State, the earliest adjudication of the Supreme Court is an unqualified ruling to the

effect that causes which would tend to disqualify a grand juror propter affectum do not furnish sufficient ground for a plea in abatement to the indictment. *Betts* v. *State,* 66 *Ga.* 508, 515. The reasons given by the court in that case seem to be valid and convincing. It is true that there are several subsequent decisions of the Supreme Court in which there are to be found intimations that the defendant might raise the point by plea in abatement, if he could prove that he had no notice that his case was to be investigated by the grand jury and had no opportunity to present his objections or challenge before the indictment was returned; but in none of these cases is there any direct ruling on the proposition. Of course, challenges propter affectum would go against grand jurors empaneled as a special jury to try an issue before the court; for in that event, they stand in the same relation as petit jurors. See *Justices of Inferior Court* v. *Griffin &c. Plank Road Co.,* 15 *Ga.* 39. There is however, a vast difference between the functions of grand juries and those of trial juries. In no true sense does the grand jury try cases in which they prefer indictments. The object of the grand inquest is, and has been from earliest time, to inform the court as to what persons are suspected of crime, to the end that they may be tried. Those who have committed, or who are accused of having committed offenses, have no right to a hearing before the grand jury, or to dictate as to how the inquest shall be made, or what range the inquiry shall take. In investigating crimes the grand jurors are performing a function for the benefit of the State and, theoretically at least, not for the benefit of the accused. It would seem that the main reason why the court should remove partial grand jurors from the panel before the inquiry begins is the inexpediency of putting the public to the trouble and expense of trying an alleged defendant, unless those who are impartial are willing to accuse him on the testimony which the prosecution, or State's counsel, is able to produce against him; and further, there is incidentally, the other reason that an injustice is done to the individual citizen when he is subjected to accusation of crime by those who would be more than normally willing to exalt bare unsupported suspicion into a reasonable ground for indictment and trial. For this reason it is proper that the court should in advance of the grand jury's action receive information from the defendant, from an amicus curiæ or from any other

legitimate source, tending to show that certain of the grand jurors would likely be biased, and that he should purge the panel so as to make it impartial. But when the grand jury has acted, when the formal charge has been made and published, when the trouble and expense of the preparation for trial has been incurred, when the defendant has been arraigned and asked, 'Are you guilty or not guilty?'—when the injury that would result from the unjust accusation, if it is unjust, has been consummated, and there can be no vindication of the defendant except upon looking to the merits of the transaction, there is but a small quantum of justice, and less of expedience, in allowing him to say, 'Delay the trial, because the State is prosecuting me on the information of prejudiced persons.' If the accusation against the defendant is unjust and untrue, that fact can be established much more surely, satisfactorily, and quickly under the plea of not guilty than it can be by quashing the indictment, and ordering a new preliminary and inconclusive inquiry before another grand jury. Largely for these reasons, as well as for others, the courts of the country have been disinclined to allow defendants, by plea in abatement, to urge that one or more of the grand jurors who acted upon the indictment were disqualified. The tendency has been to cut off collateral inquiry and to allow the main issue to proceed." The quotation in the *Hall* case is quoted with approval by the Supreme Court in *Bitting* v. *State,* 165 *Ga.* 55, 62 (139 S. E. 877).

It should be noted that a grand juror stands upon a different plane from a petit or traverse juror in respect to a cause of challenge. In Georgia, in the superior court, the grand juror, together with his fellow grand jurors, prefers upon his oath a written charge of crime, in the form called an indictment, against the accused; whereas, since the establishment of city courts in this State, the law allows a written accusation which may be preferred against the accused, in the city court, upon the oath or affidavit of the prosecutor alone, who may be the person injured or aggrieved, or of a person guilty of a crime involving moral turpitude.

We think that exceptions to defects propter delictum to a grand juror are grounds for a challenge seasonably made, yet they are not allowable after verdict. Such exceptions, when not made until after trial as in the instant case, are not seasonably made, and can not be good grounds for a new trial even though such defects

were not known to the defendant until after verdict. The excep-
tions to defects propter delictum to a grand juror in the instant
case were not made until after trial and verdict, and, even though
not known until after verdict, were not seasonably 'taken.

The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

## ON MOTION FOR REHEARING.

MacIntyre, J. The defendant contends in his motion as fol-
lows: "The record is silent as to whether the front door had ever
been opened after the same was closed by the alleged victim when
she retired for the night. The conclusion of the witness as to the
manner accused entered the house is however in the record. The
evidence in the case is that the screen door was propped open from
the porch, but there is not one line of evidence that the front
door which had been fastened, as above set out, had ever been open
prior to the time the accused was discovered in the house, except
the conclusion of the prosecutrix."

The following evidence was introduced without objection:
"When I [the alleged victim] waked up I pushed him 'off on the
side of the bed like this. He was sitting on the side of the bed.
He had his feet on the floor and I had hold of his arms. When
he came in he left the front door standing wide open and he went
out the front door just like he came in. He left the screen door
propped open. That is something I never do. When I hollered
for my brother-in-law, Mr. McDaniel, when I grabbed the light he
ran. I grabbed the flashlight out of his hand. When he ran out
of the front door I was on the floor right behind him and ran out
on the porch behind him." The record discloses no objection to
any of the above quoted testimony, and conceding, for the sake
of argument, that the alleged victim did not see the defendant
when he entered the front door of her house, yet we nevertheless
think that the jury were authorized to find that she chased him
from the edge of her bed, through the front door onto the front
porch, and saw him flee through the front door, which she saw
and knew was standing open as they passed through and that she
saw and knew that the screen door was not only open but was
propped open; both of which doors she, herself, had closed when
she went to bed a few hours before.

On the question whether the defendant "broke out of the house

rather than that he broke in," we think that it would have been impossible for the alleged victim, who was engaged in business during the day in question, to have testified positively that at no time during the interval when she left home for her work and up until the time she returned to her home at eleven o'clock at night, that the doors had not been left open by some member of her family for some period long enough for the defendant to have entered through an open door. To require such direct and positive proof would be almost equivalent to saying that a burglary could not be proved, when committed in her house, unless she kept a constant watch over it or unless she made an exhaustive search of her house when she returned from work, in order to determine the presence of strangers who might be in the closets, under the bed, or otherwise hiding therein. Such a requirement would be wholly impracticable. Moreover, neither the defendant in his statement to the jury, nor did any of his witnesses in their testimony, make the statement that the defendant had gone into the house through an open door or window. *Daniel* v. *State,* 48 *Ga. App.* 789 (173 S. E. 485).

This and all other matters in the motion having been considered, it is      *Overruled. Broyles, C. J., and Gardner, J., concur.*