1. In view of the action of the judge in rebuking the attorneys, and his instructions to the jury, regarding alleged improper remarks by the solicitor-general and the attorney assisting in the prosecution, there was no merit in any of the grounds of the motion for a new trial based on the overruling of motions for a mistrial challenging such statements. *Page 567 
2. One who has been convicted of a felony, or a crime involving an intent to defraud, in a Federal court, is not thereby rendered disqualified to serve as a juror in a court of this State, there being no statute declaring such disqualification.
(a) Accordingly, in this case there was no merit in the ground of the motion for a new trial complaining of alleged disqualification of a juror, discovered after verdict.
(b) The court did not err in overruling the motion for a new trial.
 No. 15129. JUNE 8, 1945. REHEARING DENIED JULY 6, 1945.
John M. Brady was convicted of murder, without recommendation, in the alleged killing of his wife, Mrs. Lula Brady, by shooting her with a shotgun, and was sentenced to be electrocuted. He made a motion for a new trial on the usual general grounds, and by amendment added five special grounds. The motion as amended was overruled, and he excepted.
Special ground 1 assigned error on the admission of testimony. Special ground 2 complained that the court erred in overruling a motion to declare a mistrial because of alleged improper remarks by Mr. Copland, the solicitor-general, during the introduction of testimony. Special grounds 3 and 4 assigned error upon the overruling of similar motions based on alleged improper argument by Mr. T. B. Rainey, who assisted in the prosecution, and by the solicitor-general. Special ground 5 was based on alleged disqualification of a juror, discovered after verdict. There is no insistence upon the first special ground, or upon the general grounds. The remaining grounds, stated more fully, were substantially as follows:
Special ground 2. The defendant contended that he did not know the gun was loaded, and that it was accidentally discharged when he was holding it in his hands and his wife grabbed it by the barrel and jerked it toward her. In this special ground, it appeared that the solicitor-general offered rebuttal testimony to the effect that, about a month before Mrs. Brady was killed, the defendant was seen to shoot in the direction of the house. The defendant's attorney objected to this evidence as having no bearing upon the case, whereupon the solicitor-general stated: "It is in rebuttal, in rebuttal of the defendant's statement. He said he had no intention of hurting Mrs. Brady, that he had no idea the gun was loaded, and we are doing this to show the state of mind of a previous occurrence that happened. It is certainly admissible *Page 568 
in rebuttal of his statement that he had no intention." The defendant's attorney then moved for a mistrial because of the quoted statement, contending that it was an attempt to place the defendant's character in issue, and was prejudicial. The judge excluded the testimony, rebuked the solicitor-general for having made the statement, instructed the jury not to consider it, and refused to declare a mistrial.
Special ground 3. This ground related to alleged improper argument by Mr. T. B. Rainey, who was assisting the solicitor-general in the trial of the case. When the motion for mistrial was made, the judge stated: "Unfortunately my attention was diverted and I did not hear the remark." It appears that after some preliminary colloquy as to what Mr. Rainey had said, the following occurred: By Mr. Rainey: "I said there was only one question to pass upon in this case and that is whether they would give him a life sentence or have him electrocuted — or given life imprisonment, that he had already plead guilty to shooting his wife and killing her — Mr. Brady had." By the court: "Putting it that way, Mr. Rainey, I think it would be improper because he has filed a plea of not guilty, and it is for the jury to say whether he is guilty or not guilty. I think it was wrong on your part to have made the statement that he was guilty or that he had already plead guilty. That was incorrect, and I rebuke you for having made such a statement and ask you to stick to the evidence in the case in your argument of the testimony. Gentlemen, you will disregard that remark altogether and pay no attention to it. Cast it out of your minds altogether and let it have no influence on your minds. Proceed." Mr. Wohlwender renewed his motion, contending the "prejudice" was not removed. By the court: "Proceed." By Mr. Rainey: "Your Honor means that I can't say Mr. Brady killed his wife?" By the court: "Certainly not, Mr. Rainey." Mr. Wohlwender again moved for a mistrial, because of the latter remark by Mr. Rainey. By the court: "He asked the court a question, and the court told him he could not do it. I overrule your motion." The ground of the motion for a new trial then alleged various reasons why, as the movant contended, it was error not to grant a mistrial.
Special ground 4. In this ground, it appeared that the solicitor-general, in his argument to the jury, stated: "Not many people *Page 569 
who have ever been convicted and sentenced for life that have ever served the sentence." In overruling the defendant's motion for a mistrial, the judge stated: "That was entirely improper. Confine your argument and observation to the testimony and the defendant's statement and the law of the case. I ask the jury to disregard that statement. Pay no attention to it. Let it have no effect on your mind or verdict. Put it out of your mind and only consider the evidence and the defendant's statement and proper arguments. Don't make it on remarks that are excluded." After this statement by the judge, the motion for a mistrial was renewed and overruled, and the argument proceeded.
Special ground 5. In this ground movant alleged that W. T. Bell, a member of the jury trying him, "had plead guilty to an indictment in the United States district court for the Middle district of Georgia for an offense involving moral turpitude, and was then and there under sentence of the United States district court for the Middle district of Georgia for said offense." Attached as exhibits to this ground of the motion, were certified copies of an indictment plea, and "sentence" of the United States district court, middle district of Georgia, in the case of United States v. William Thomas Bell. The indictment was in four counts, the charges therein being as follows: Count one: That the accused "did unlawfully, willfully, and knowingly have in his possession and custody and under his control a still and distilling apparatus for the production of spirituous liquors, set up without having the same registered as required by law." Count two: That the accused "did unlawfully, willfully, and knowingly carry on the business of a distiller of spirituous liquors, without having given bond as required by law." Count three: That the accused "did unlawfully, willfully, and knowingly engage and carry on the business of a distiller of spirituous liquors, with intent to defraud the United States of the tax on the spirits distilled by him." Count four: That the accused "unlawfully, willfully, and knowingly did work in a distillery for the production of spirituous liquors, upon which no sign bearing the words `registered distillery' was placed and kept, as required by law." The date of each alleged offense was January 4, 1944. The plea of guilty was entered on September 4, 1944. On September 8, the following sentence was passed: "The defendant having (pleaded guilty), and it having *Page 570 
been made to appear to the satisfaction of the court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved by suspending the imposition of sentence and by placing the defendant under probation under the provisions of the probation act, approved March 4, 1925, it is considered and adjudged that the imposition of sentence be and the same is hereby suspended for the maximum period for which the defendant might now be sentenced, and that defendant be and is hereby placed upon probation under the provisions of said act and upon the following terms and conditions: 1. Defendant shall pay to the United States at this time $ ____ as a condition of probation. 2. The probation period shall be for three (3) years. 3. Defendant shall report as directed by the probation officer, Charles E. Roberts, Macon, Georgia. 4. During the maximum period for which defendant might now be sentenced, or during the period of probation, whichever is greater, the conduct and behavior of defendant shall be good in all respects, and he shall refrain from violation of any and all State and Federal penal laws, and from any activity, conduct, or behavior tending toward any such violation. . . In open court, this 8th day of September, 1944." The verdict finding the defendant Brady guilty of murder was dated October 25, 1944. This ground of the motion alleged that such plea of guilty and sentence of the juror W. T. Bell rendered him disqualified to serve as a traverse juror in the trial of the movant, and that such disqualification was not known to the movant or his counsel until after the verdict against him, and could not have been discovered by them in the exercise of ordinary care and diligence. Affidavits of the movant and his counsel were attached in support of the allegations as to diligence. The State made a counter-showing, and additional affidavits were introduced on both sides.
1. The defendant was convicted of killing his wife by shooting her with a shotgun. His motion for a new trial as amended contained the usual general grounds and five *Page 571 
special grounds. There is no insistence upon the first special ground or upon the general grounds.
Grounds 2, 3, and 4, being similar, may be considered together. They complain severally of refusals of the judge to declare a mistrial because of statements made in the presence of the jury by the solicitor-general and Mr. T. B. Rainey, who assisted in the prosecution. Ground 2 refers to a remark made by the solicitor-general during the introduction of testimony. Grounds 3 and 4 each relate to alleged improper argument. The material facts touching all these grounds have been set forth in the preceding statement and need not be repeated, reference being made to such statement.
Even if it should be assumed that the statements of the solicitor-general, referred to in special grounds 2 and 4, were improper, neither of these grounds can be taken as showing cause for a new trial; it being fairly certain that whatever impression, harmful to the accused, either statement of the solicitor-general may have made upon the minds of the jury, such impression was effectually removed by the judge's instructions to the jury on the subject, and his rebuke of the solicitor-general in the jury's presence. Lucas v. State, 146 Ga. 315 (7) (91 S.E. 72); Thornton v. State, 190 Ga. 783 (2) (10 S.E.2d 746);Ward v. State, 199 Ga. 203 (33 S.E.2d 689). For similar reasons, there was no merit in ground 3, referring to alleged improper argument by Mr. Rainey. Wallace v. State,126 Ga. 749 (2) (55 S.E. 1042); Floyd v. State, 143 Ga. 287
(5) (84 S.E. 971); White v. State, 177 Ga. 115 (5) (169 S.E. 499).
2. Special ground 5 was based on the alleged disqualification of one of the jurors, discovered after the verdict. It appeared that a few weeks before this trial, the juror had entered a plea of guilty to an indictment in the United States district court for the middle district of Georgia, which indictment contained four counts, all relating to the operation or possession of a distillery in violation of the revenue laws. Two or more of the counts charged the commission of felonies. In one of them, the offense as charged involved "an intent to defraud the United States of the tax on spirits distilled." Upon such plea of guilty, a judgment was entered suspending the imposition of sentence and placing the accused on probation. For present purposes, we may assume that this judgment amounted to a sentence within the ordinary *Page 572 
meaning of the term. One of the questions presented, then, is whether a person who has been convicted of a felony, or a crime involving an intent to defraud, in a court of the United States, is competent to serve as a juror in a court of this State. We are speaking here, not of the nature or grade of the offense, but of the jurisdiction in which the conviction occurred.
At common law, a juror was subject to challenge propter delictum, which is materially different from an objection propter defectum. 4 Blackstone, 352 (2 Cooley's Blackstone (4th ed.), 1492-1493); 31 Am. Jur. 650, § 122. Such a disqualification was expressly recognized by this court in Wright v. Davis,184 Ga. 846 (193 S.E. 757). Also, in Williams v. State,12 Ga. App. 337 (3) (77 S.E. 189), a new trial was ordered because one of the jurors had been convicted of larceny. But in the Wright and Williams cases, the jurors had been convicted in courts of this State, so that neither of those cases involved the present question. Nor is there any other Georgia decision directly in point, so far as we are aware.
The question is one of great importance, relating as it does to a conflict of laws and a fundamental principle of jurisdiction. It is the general if not the universal rule that one State will not enforce the penal laws of another State, and this rule applies as between a State and the United States, as well as between the different States. In Wisconsin v. Pelican Ins. Co., 127 U.S. 265 (8 Sup. Ct. 1370, 32 L. ed. 239), it was said that the courts of no country will execute the penal laws of another, and that this rule applies as between State and Federal courts, not only to prosecutions for crimes, but also to actions in favor of the State for the recovery of pecuniary damages for the violation of its statutes.
The question under consideration is analogous to that as to whether a witness may be rendered incompetent to testify in one State by his conviction of a crime in another State. In this statement we refer strictly to the question of competency, and not to impeachment or an effort to impeach or discredit. In Loganv. United States, 144 U.S. 263 (7), 303 (12 Sup. Ct. 617,36 L. ed. 429), which involved the competency of a witness, the Supreme Court said: "At common law, and on general principles of jurisprudence, when not controlled by express statute giving effect within the State which enacts it to a conviction and sentence *Page 573 
in another State, such conviction and sentence can have no effect, by way of penalty, or of personal disability or disqualification, beyond the limits of the State in which the judgment is rendered. Wisconsin v. Pelican Ins. Co., 127 U.S. 265; Commonwealth v. Green, 17 Mass. 515; Sims v. Sims,75 N.Y. 466; National Trust Co. v. Gleason, 77 N.Y. 400
[33 Am. R. 632]; Story on Conflict of Laws, § 92; Greenl. Ev. § 376. It follows that the conviction of Martin in North Carolina did not make him incompetent to testify on the trial of this case." Again, in Huntington v. Attrill, 146 U.S. 657, 673
(13 Sup. Ct. 224, 36 L. ed. 1123), it was said by the same court, arguendo: "And personal disabilities imposed by the law of a State, as an incident or consequence of a judicial sentence or decree, by way of punishment of an offender, and not for the benefit of any other person — such as attainder, or infamy, or incompetency of a convict to testify, or disqualification of the guilty party to a cause of divorce for adultery to marry again — are doubtless strictly penal, and therefore have no extraterritorial operation."
In Brown v. United States, 147 C.C.A. 289 (233 Fed. 353, L.R.A. 1917A, 1133), it was held, that: "As the Federal courts are courts of an entirely different sovereignty and are wholly independent of the States, a conviction of an infamous crime in the State court rendering a person incompetent to testify in the State court does not render him incompetent to testify in the Federal courts any more than it would in the courts of a foreign jurisdiction, for the Federal courts, while following the State laws, do not give effect to a conviction by a State court." In Samuels v. Commonwealth, 110 Va. 901 (66 S.E. 222, 19 Ann. Cas. 380), the court held that one who had been adjudged guilty of perjury by a Federal court sitting in Virginia was not thereby disqualified as a witness in the State court, although by a statute of Virginia a person convicted of perjury was incompetent to testify, the reasoning of the court being that neither the State nor the Federal statute contemplated imposing the punishment prescribed by the other, and that the courts of neither jurisdiction would punish violations of the statutes of the other jurisdiction.
The rulings in the foregoing cases accord with the greater weight of judicial opinion, so far as competency or incompetency of a witness is concerned. 70 C. J. 112, § 136; State v.
Landrum, *Page 574 127 Mo. App. 653 (106 S.W. 1111); Weber v. State,18 Okla. Cr. 421 (195 P. 510); and see also the authorities cited in the excerpt quoted from Logan v. United States, supra. Contra: State v. Candler, 3 Hawks (10 N.C.) 393; State v. Foley,15 Nev. 64 (37 Am. R. 458); Chase v. Blodgett, 10 N.H. 22.
We think that the majority rule is sound in principle, and we see no reason why it should not be applied to a juror as well as to a witness. It was so applied in Queenan v. Okla.,11 Okla. 261 (71 P. 218, 61 L.R.A. 324), in which the court said: "In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in the penitentiary in another state, such conviction and sentence can have no effect by way of penalty or personal disability or disqualification beyond the limits of the State in which the judgment was rendered;" citing Logan v.
United States, supra.
Be it remembered, there is no statute in this State which renders a person who has been convicted of a crime, whether in Georgia or elsewhere, disqualified to serve as a juror. At common law, a person was convicted by a plea of guilty or verdict; he was attainted by the judgment. Commonwealth v. Lockwood,109 Mass. 323 (12 Am. R. 699); Shepherd v. People, 25 N.Y. App. 406, 419; 9 Words Phrases (Perm. ed.) 608. Accordingly, in order to hold the juror disqualified in this case, it would be necessary to attach to him an attainder or infamy as a penal consequence of the judgment of the Federal court; and this, in the absence of statute, can not be done.
The provisions of the State and Federal constitutions (see Code, §§ 2-8501, 1-602), whereby the constitution of the United States and laws enacted in pursuance thereof are made the supreme law of this State, have no bearing upon the present question; there being nothing in that constitution requiring the State of Georgia to make conviction of a Federal offense a ground of disqualification to serve as a juror. Compare Small v.Slocumb, 112 Ga. 279 (37 S.E. 481, 53 L.R.A. 130, 81 Am. St. R. 50); Central of Georgia Ry. Co. v. Jones, 152 Ga. 92
(108 S.E. 618).
In Texas there is a statute to the effect that one who has been convicted of a felony is disqualified to serve as a juror. This statute has been construed by the courts of Texas to include convictions in Federal courts. Amaya v. State, 87 Tex.Crim. 160 *Page 575 
(220 S.W. 98); Hughes v. State, 105 Tex.Crim. 57
(284 S.W. 952). Since these decisions were expressly based upon the statute, they can be given but little, if any, weight here. See Waits v. State, 75 Tex. Cr. 507 (171 S.W. 708). While the decisions in Browning v. State, 120 Ohio St. 62
(165 N.E. 556), and Goad v. State, 106 Tenn. 175 (61 S.W. 79), may contain implications tending to support the view urged by the defendant, in neither case did the court rule upon the precise question, nor was there any discussion of it on principle. See generally, in this connection, 31 Am. Jur. 654, § 129, and annotation in 126 A.L.R. 521-525.
In view of what has been said, we hold that the juror was not disqualified because of his conviction in the Federal court, and therefore that special ground 5 was without merit. To hold otherwise would allow disqualification of a juror to be determined finally by the law and judgment of a separate and distinct sovereignty; whereas, in the present state of our law, we can find no authority for applying such a test.
Supplemental briefs were invited by this court on the questions as to whether the plea of guilty alone, or the plea and the judgment suspending "imposition of sentence" and placing the accused (the juror) on probation, taken together, would amount to a conviction. Able briefs were submitted on these questions, but, in the view that we have taken of the primary question, no ruling upon such additional questions is necessary. But see generally, 13 U.S.C.A., § 724; Cooper v. United States, 91 F.2d 195, 199; Nix v. United States, 131 F.2d 857; Commonwealthv. Sacco, 255 Mass. 369 (151 N.E. 839); People ex rel. Brooksv. Warden of Women's Prison, 175 Misc. 66324 N.Y. Supp.2d 931; Page v. State Board of Medical Examiners, 141 Fla. 294
(193 So. 82); 9 Words Phrases (Perm. ed.) 612, 1945 Cum. Pocket Part, 111; 70 C. J. 114, 115 §§ 138, 140.
The judge did not err in refusing a new trial.
Judgment affirmed. Jenkins, P. J., Duckworth, Atkinson, andWyatt, JJ., concur. *Page 576