49677. FREEMAN v. THE STATE.

Argued September 6, 1974 — Decided September 25, 1974.

*Paul J. Sewell, Daniel S. Zervin,* for appellant.
*Lewis R. Slaton, District Attorney, Carter Goode, Assistant District Attorney,* for appellee.

DEEN, Judge.

1. The defendant's insanity defense under a general plea of not guilty was supported by testimony of a psychiatrist who had interviewed him on two occasions and based his opinion primarily on what the defendant told him. We have examined the record on the propositions that the evidence demanded a verdict either of insanity at the time of commission of the offense or of the mental disease of delusional insanity. The strongest evidence for the defendant is his own, to the effect that he had seen his wife in the automobile with another man; that he went to ask her who it was; she replied that it was her lover, and he "blanked out" and shot her, although he did not remember doing so. This response was categorically denied by the wife, who also testified to previous assaults and beatings, and that she left him for that reason. The psychiatrist testified that, based on what the defendant had told him, "I think [he was] under the influence of the emotion that was going on inside him at that time, he was not capable of making a judgment in terms of good, bad, right, wrong, or any such thing" but that, if the defendant in relating the story knew that he was deliberately exaggerating the whole thing, then his opinion would be different, but that he believed the defendant was not trying to deceive him. This testimony throws the case back on the factual issue of whether Freeman (a) did not at the time have the mental capacity to distinguish between right and wrong (Code Ann. §

26-702) or (b) acted because of mental disease or injury from a delusional compulsion which overmastered his will to resist the commission of the crime (Code Ann. § 26-703). As to the first proposition, the weight of evidence is against it. The victim's brother testified that before going to the laundry the defendant called him to ask where his wife was and that he became sufficiently alarmed to call an employee at the place and ask her to warn the victim. The defendant armed himself with a pistol before leaving. He shot her almost immediately after arriving. The wife testified that he said, "I told you I was going to kill you." The jury was authorized to find that the assault was both intentional and malicious. They might, of course, have believed the defendant's testimony that he blanked out and did not know what he was doing, but they were by no means compelled to do so. There is no history of mental illness such as appears in *Wilson v. State,* 9 Ga. App. 274 (70 SE 1128) or *Handspike v. State,* 203 Ga. 115 (45 SE2d 662). As to the second defense, the only delusional compulsion urged is that the defendant mistakenly believed his estranged common law wife was seeing other men. But, to rely on delusional compulsion alone, one must show both that the act was the result of the delusion "and also that the delusion was as to a fact which, if true, would justify the act." *Mullins v. State,* 216 Ga. 183, 188 (115 SE2d 547) and cit.; *Johnson v. State,* 226 Ga. 511, 515 (175 SE2d 840). In today's world adultery is not a viable justification for homicide. One may be suffering from mental disease or infirmity as a result of which he would not be criminally responsible for his actions, but such action alone does not prove inability to form a criminal intent. Othello, for example, acted under the same error. The court correctly charged that if the defendant "acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime," he should not be found guilty. This was a sufficient instruction. To charge further that "the act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind" would, under the circumstances, have been argumentative, and the request was properly refused. The circumstances are vastly different from

those in *Brown v. State,* 228 Ga. 215 (184 SE2d 655) where a married woman with four young children eventually shot a woman with whom her husband had been having a protracted affair, so that it could be said that if the defendant had been correct in believing the man sitting in the car with the victim was her lover he might have on that basis alone been justified in shooting him. The jury was properly instructed on the various issues raised by the insanity defense.

2. The assault was committed in November, 1973, and the case was tried on April 3, 1974. A character witness for the defendant testified on direct examination that he was a minister, that he had known Freeman since the first of the year; that he had been coming to church since that time on a regular basis when he was not working; that Freeman had not been involved in any crime of violence since he had known him; that as far as he knew the defendant's reputation for peacefulness was good. Objection was sustained to the question, "Do you know his general reputation in your community?" meaning apparently the church, on the ground that the statutory questions regarding the defendant's reputation refer to the community in which he lives. The law does not confine the knowledge entirely to the community of the defendant's residence, for one familiar with his reputation where he practices his daily vocation may testify to that fact. *A. & R. Co. v. Reynolds,* 117 Ga. 47 (43 SE 456); *Bennett v. George,* 105 Ga. App. 527 (12) (125 SE2d 122). In either case, the association must be long enough, both of the subject's relationship with the community and of the witness' with the subject, to lend the value judgment credence. On a showing that one had been a member of a church community over a period of time and to an extent where knowledge of general reputation might be available, the witness should be allowed to answer. Here all that appears is that the defendant attended church services "when he was not working" for a three-month period *after* the commission of the offense. The value of such testimony is questionable; at any rate the witness was allowed to state that the defendant's reputation for peacefulness was good, and under the circumstances no reversible error

appears.

3. On redirect examination defendant's counsel inquired of the medical witness: "Did Russell ever discuss with you any incident of somebody shooting into his trailer?" The witness replied in the affirmative, at which point an objection to going into the conversation was sustained. To the extent that the relation of extraneous events by the defendant entered into the physician's diagnosis of mental condition, but no other, the testimony would be admissible. See *Fields v. State,* 221 Ga. 307 (144 SE2d 339). However, here the witness had both stated his opinion and the pertinent facts on which he based it on direct examination. The incident does not appear to have been relevant to the diagnosis, and the purpose of the question was not explored. Nor did it relate to the areas developed on cross examination. The conduct and extent on redirect examination is largely within the court's discretion. *Daugherty v. Vick,* 127 Ga. App. 767 (1) (195 SE2d 208). Since the incident's relevance if any to the medical testimony is not shown, no abuse of discretion appears.

4. Carrying a pistol without a license and carrying a concealed weapon are separate offenses, although growing out of the same transaction (*Bishop v. State,* 21 Ga. App. 236 (4), 94 SE 49), as are aggravated assault and carrying a concealed weapon (*Howard v. State,* 128 Ga. App. 807, 198 SE2d 334), and aggravated assault and carrying a pistol without a license (*Thomas v. State,* 128 Ga. App. 538 (2), 197 SE2d 452). The court did not err in instructing the jury to consider guilt or innocence separately on each of the offenses charged.

*Judgment affirmed. Eberhardt, P. J., and Stolz, J., concur.*