44494. NGUYEN NGOC TIEU v. THE STATE.
(358 SE2d 247)

MARSHALL, Chief Justice.

The appellant, Nguyen Ngoc Tieu, was convicted of felony mur-

der. In this case, the jury was impaneled and sworn, and prosecution witnesses testified, after which it was discovered that the individual who had been brought into court and placed on trial was not in fact the defendant. Over defense objection, the trial court granted a mistrial. At the subsequent trial, a conviction was obtained. The defendant appeals, arguing that the trial court erred in overruling his plea of double jeopardy and in admitting in evidence a taped statement made by the defendant in the course of a custodial police interrogation. The state asserts that, "the factual situation in the case at bar appears to be without precedent in the annals of American jurisprudence." For reasons which follow, we affirm.[1]

The appellant is Vietnamese, and he was a boarder in a trailer owned by the victim, Debra Marie Rollins. On the day of the murder, the victim had returned to her trailer with a carload of people after going grocery shopping. As she approached the entrance to her trailer, the appellant came out of the door and proceeded to stab the victim in the chest with a knife. She exclaimed, "He stabbed me, he stabbed me." The appellant pushed the victim off the porch at the entrance to the trailer, and she fell onto the ground. As the appellant began to run away, a male occupant of the automobile attempted unsuccessfully to subdue him. However, he was apprehended later that day by law-enforcement authorities.

When law-enforcement authorities arrived on the scene of the crime, they found a bloodied knife beneath the porch and near the victim's body. The victim was pronounced dead on arrival at the medical facility to which she was taken. The medical examiner testified that the victim received a six-and-three-quarters-inch stab wound through the heart with an object that was consistent with the murder weapon introduced in evidence by the state.

After the appellant was taken into custody by law-enforcement authorities, he was advised of his *Miranda* rights through a Vietnamese interpreter, Mrs. Lee Sheridan. Although Mrs. Sheridan's translation of the appellant's *Miranda* rights from English to Vietnamese was, as stated by the appellee, "[c]oncededly imperfect," Mrs. Sheridan did testify that she explained these rights to the appellant and that he understood his rights. She further testified that he was explicitly told that he could "talk now, or . . . wait for the lawyer

---

[1] The crime was committed on June 21, 1985. The first trial commenced on October 23, 1985, and a mistrial was declared on October 24, 1985. The second trial commenced on November 18, 1985, and the jury returned its verdict finding the appellant guilty of felony murder on November 21, 1985. A motion for new trial was filed on December 20, 1985, and the transcript was filed in the superior court on June 19, 1986. The motion for new trial was denied on February 20, 1987. The notice of appeal was filed on March 23, 1987, and the record was docketed in this court on March 30, 1987. The case was orally argued on June 1, 1987.

to come, and he say [sic] he didn't need a lawyer to talk, he will talk now."

The appellant then proceeded to tell the police that he had lived in the victim's trailer for approximately two weeks. He was told he would have to move out, and this upset him. He drank a couple of beers, and when the victim returned to the trailer he was so upset that he "opened the door and saw her and just started to stab her."

The individual who served as the Vietnamese interpreter at trial was Mr. Nguyen. Before the jury was impaneled at the first trial, Mr. Nguyen informed the trial judge that he was having trouble communicating with the defendant. The trial judge determined that the problem was attributable to the defendant's nervousness, and the trial judge concluded that, with the help of the interpreter, the defendant could understand the proceedings "as we move along."

Fourteen prosecution witnesses were called to testify. Among them were two eyewitnesses to the crime, who identified the individual who had been placed on trial as the perpetrator of the murder. Mrs. Lee Sheridan was called to testify, and the taped statement made by the appellant was played to the jury after the trial judge ruled at the *Jackson-Denno* hearing that this statement was freely and voluntarily given.

After it was brought to the attention of the court that the person who had been brought into court to stand trial was not in fact the defendant, defense counsel was called as a witness. He testified that he thought that the person brought into the court was the defendant. With regard to the fact that this individual was not providing the defense with any assistance, defense counsel testified that, "we frankly thought that he was trying to pretend, or play games with us, due in part to the background we heard yesterday about . . . the difficulty Mr. Nguyen had with him. It was a little bit disarming that he was unable to work with us, and we didn't know whether it was intentional or not."

The state moved for a mistrial on grounds of "manifest necessity," and if a mistrial was not granted "the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U. S. 579 (9 Wheat. 579) (1824). Over defense counsel's objection, the trial court granted the motion.

At the subsequent trial, essentially the same evidence was introduced, except that an additional eyewitness identified the appellant as the perpetrator of the crime.

1. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. *Lewis v. United States*, 146 U. S. 370 (1892)." *Illinois v. Allen*, 397 U. S. 337, 338 (90 SC 1057, 25 LE2d 353) (1970). As we interpret decisions of the United States Supreme

Court, commencing with *Diaz v. United States*, 223 U. S. 442 (32 SC 250, 56 LE 500) (1912), and culminating with *Taylor v. United States*, 414 U. S. 17 (94 SC 194, 38 LE2d 174) (1973), it is doubtful that a defendant who has been charged with a capital felony and who is in police custody has the capacity to waive his right to be present at the commencement of the trial.

And, the general rule, which obtains in Georgia, is that in a jury trial a person is placed in legal jeopardy when he is put on trial before a court of competent jurisdiction, on indictment which is sufficient in form and substance to sustain a conviction, and a jury has been impaneled and sworn. *Shaw v. State*, 239 Ga. 690 (1) (238 SE2d 434) (1977). See generally 21 AmJur2d 456, Criminal Law, § 260. Here, we hold that the appellant was not placed in legal jeopardy in the earlier proceeding, since it was another individual and not the appellant who was placed on trial.

2. The trial court's findings that the appellant was informed of his *Miranda* rights, that he understood these rights, and that his subsequent statement to the police was freely and voluntarily given, are supported by the evidence and are not clearly erroneous. E.g., *Cameron v. State*, 256 Ga. 225 (9) (345 SE2d 575) (1986).

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

Nguyen Ngoc Tieu was accused of and indicted for murdering a woman whose trailer he had shared for a short time. He was arrested, admitted the stabbing, and was placed in a cell with another Vietnamese man to await trial. When his trial date arrived, his cellmate was taken into the courtroom instead of Tieu. This man, Hen Van Nguyen, sat in the courtroom for two days while numerous eyewitnesses, one of whom had lived in the trailer for two weeks with appellant, identified Hen Van Nguyen as being Tieu. As soon as the error was realized, a mistrial was declared over the appellant's objection. Several weeks later, a new jury was chosen to try Tieu which returned a verdict of guilty of felony murder.

The first issue is whether the double jeopardy bar against reprosecution attached in this case. The rule is that in a jury trial the double jeopardy bar attaches when the jury is impaneled and sworn. *Shaw v. State*, 239 Ga. 690 (238 SE2d 434) (1977). The facts in this case indicate that jeopardy had attached under the general rule. The jury had been impaneled and sworn and evidence had been presented.

The majority holds that double jeopardy did not attach in this case because the defendant was not physically present in the courtroom and another individual, not the appellant, was placed on trial. It has been consistently held that it is the legal right and privilege of the

defendant to be present at every stage of the trial. The fact that the wrong person was sitting at the defendant's table has no effect upon whether or not double jeopardy attaches. The fact that Tieu's case was called, his indictment was read in open court, issue was joined on his indictment, and Tieu's jury was sworn is the controlling factor. This is not a case in which the right person was tried for a crime he did not commit. In *Nolan v. State,* 55 Ga. 521 (21 Am.Rep. 281) (1874) and *Barton v. State,* 67 Ga. 653 (44 Am.Rep. 743) (1881), this Court held that if the jury returns its verdict and a defendant is not present, upon proper motion the verdict must be set aside because such a verdict is illegal. In *Bagwell v. State,* 129 Ga. 170 (58 SE 650) (1907), a mistrial was granted during the forced absence of the defendant. The court explained the purpose behind the rule, "we are of opinion that the better view, both on authority and principle, is that the court can not legally order a mistrial in a case of this character, in the enforced absence of the accused and without his consent, because of the inability of the jury to agree on a verdict, and that where a mistrial is so ordered, the accused, on a subsequent trial, may plead former jeopardy." Id. at 174. According to *Bagwell,* if the appellant had been physically prevented from attending his trial, then double jeopardy would bar prosecution. Likewise, if the appellant had made a knowing waiver of his right to be present at trial, then double jeopardy would attach and bar reprosecution. Absence is irrelevant to the consideration of double jeopardy whether it is by force, voluntary waiver, or procured through the state's mistake. Thus, under Georgia law double jeopardy attaches in a jury trial when the jury is sworn and impaneled even in the absence of the defendant.

The second and determinative issue in this case is whether the presence at trial of another individual who is not the accused constitutes "manifest necessity" as described by the standard laid down in *United States v. Perez,* 22 U. S. 579 (9 Wheat. 579) (1824). The *Perez* standard allows a retrial in a case where it is deemed to be a "manifest necessity" in order to avoid a situation where "the ends of public justice would otherwise be defeated."

In determining "manifest necessity," "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Arizona v. Washington,* 434 U. S. 497, 505 (98 SC 824, 54 LE2d 717) (1978). The second step places a heavy demand on the trial judge. A trial judge must use the proper exercise of his discretion to declare a mistrial. The trial judge must consider the many factors and purposes of the double jeopardy clause. He must first consider the threat of embarrassment, humiliation, and anxiety that accompanies another trial that the defendant and his family must face.

*Benton v. Maryland*, 395 U. S. 784, 796 (89 SC 2056, 23 LE2d 707) (1969). That factor is certainly present in this case. Obviously, the appellant has suffered anxiety and insecurity because of the second trial due to an inexcusable mistake made by the state at the first trial.

There are other factors to be considered. The trial judge must consider other reasonable and less drastic alternatives to a mistrial. *Gori v. United States*, 367 U. S. 364 (81 SC 1523, 6 LE2d 901) (1961), (dissenting opinion at 371). The trial judge must also consider "if an impartial verdict cannot be reached [by the jury], or if a verdict of conviction could be reached, but would have to be reversed on appeal due to an obvious procedural error in the trial." *Illinois v. Somerville*, 410 U. S. 458, 464 (93 SC 1066, 35 LE2d 425) (1973).

A procedural error was in issue in *Somerville*, id. After the case had been called and the jury impaneled and sworn, the prosecutor realized that the indictment was fatally and incurably defective under the applicable Illinois law. The defect certainly would have been asserted by the defendant on appeal. The Supreme Court upheld the trial judge's decision to grant a mistrial over the defendant's objection. The determining factor in the Court's decision appears to be that the issue was one of procedure and not an issue that went to guilt or innocence.

Arguably the misidentification of the appellant involves a procedural error. That would be the case if the misidentification had come to the trial court's attention before evidence was presented to the jury. However, that is not the case. Several witnesses testified and identified the other Vietnamese man at trial as Tieu, evidence of the stabbing was presented, and a tape containing Tieu's alleged statement was played to the jury. At this point the nature of the case was no longer procedural. Evidence of guilt or innocence was squarely laid in the lap of the jurors.

A related factor in considering double jeopardy problems concerns the "valued right" of the defendant "to have his trial completed by a particular [jury]." *United States v. Jorn*, 400 U. S. 470, 484 (91 SC 547, 27 LE2d 543) (1971). The appellant's first "particular jury" saw two eyewitnesses, two interpreters, the prosecutor, and the defense counsel, all misidentify the appellant. This "particular jury," after witnessing the misidentification, certainly could have found the appellant innocent. Thus, this case involves more than a procedural error. It involves the issue of guilt or innocence that should have been decided by the first "particular jury."

A final factor involves allowing the prosecutor to gain an unfair advantage in obtaining a conviction. " 'The Double Jeopardy clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.' This prohibition, lying at the core of the Clause's

protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction." *Tibbs v. Florida*, 457 U. S. 31, 41 (102 SC 2211, 72 LE2d 652) (1982). An essential element in a criminal trial concerns the identity of the perpetrator of the crime. The prosecutor must present evidence on this point. During the appellant's retrial, essentially the same evidence was presented; except, an additional eyewitness was used to correctly identify the appellant. In the first trial, the prosecutor failed to "muster" evidence that identified the appellant. Given a second chance, the prosecutor was successful which is the exact result the double jeopardy clause seeks to prevent.

Finally, the conclusion that the State was at fault in this case is inescapable. The proper authorities failed to bring the right defendant to the court house. The prosecutor failed to recognize that the wrong man was in court. The interpreters provided by the State and the state's witnesses failed to recognize that the man being tried in court was not Tieu. The appellant should not have been twice put in jeopardy by a comedy of errors created by the State.

DECIDED JULY 9, 1987.

*H. Bradford Morris, Jr.,* for appellant.

*C. Andrew Fuller, District Attorney, Daniel A. Summer, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.