### 44802. SKIPPER v. THE STATE.
(364 SE2d 835)

HUNT, Justice.

This is a death penalty case. Appellant, Gilbert Skipper, Jr., was convicted by a jury in Appling County of murder, aggravated sodomy and rape. He appeals.[1] For reasons which follow, we affirm the conviction on all counts, but we vacate the death sentence and remand for a resentencing.

1. The evidence, considered in the light most favorable to the state, showed the following:

The victim, William Randall Morris, along with his wife Gretchen and their infant child, lived in a rented house with no telephone in rural Appling County, near the defendant. Approximately two weeks prior to the murder, the defendant and the victim got into an argument concerning whether the defendant had dropped the latter's baby. The victim told him to leave and not to return. The defendant left, stating, "Good luck living out here; you're going to need it."

Following certain incidents of harassment, the victim left a note in the defendant's mailbox that said, "Skipper, this . . . better stop. I have already talked to the landlord about you. If I catch you doing anything else, I'm going to the law."

The next day, the defendant told his friend Homer Lane about

---

[1] The defendant was sentenced to death on September 12, 1986. He filed a motion for new trial seven days later, and an amendment thereto on September 25, 1986. He filed a second amendment on May 21, 1987, the date of the hearing on the motion for new trial, and the motion was denied that day. A notice of appeal was duly filed and the case was docketed in this court June 30, 1987. The parties were granted extensions of time to file their briefs, and the case was orally argued September 21, 1987.

the note and stated to him that he had to get rid of the victim, and that he "might have to kill the whole bunch . . . his wife and baby."

The defendant borrowed a pickup truck and went to the victim's home armed with a .12 gauge shotgun and a pistol. The defendant pointed the shotgun at the victim, and when the latter ran, chased him around the house and shot him in the head. The defendant then dragged the wife and child through a cornfield to an area under a pecan tree. He forced the wife to orally sodomize him and then he raped her.

They returned to the house. The defendant broke out the porch light by striking it with his shotgun. Then, threatening to kill both the wife and the baby, he demanded a drink. He took her into the bedroom and continued to threaten her, at one point choking her with the belt of her bathrobe. Finally, he told her he would let them live, provided that she follow his specific instructions — she was to wait 30 minutes, and then run to the defendant's house to report that an unknown assailant had murdered her husband. He then left.

Thirty minutes later, the wife went to the defendant's house and reported the murder. Law enforcement officers were summoned, and the wife reported the crime as she had been instructed to, while the defendant stood by her side. One G.B.I. agent testified that "we couldn't separate the company of Mr. Skipper and Mrs. Morris . . . everywhere Gretchen Morris went, the Skippers were around her." When a deputy sheriff prepared to take the wife to the station, the defendant attempted to get into the car with her, but was not allowed to do so.

After the law enforcement officers left, Homer Lane, who had stopped by in the meantime, asked the defendant "if he done it?" Lane testified that the defendant laughed and replied, "What do you think?"

After being removed from the presence of the defendant and being assured that her baby was safe in the custody of the police, the wife identified the defendant as the assailant and gave a lengthy statement recounting the attacks on her and her husband.

Investigators at the scene of the crime found tracks, including marks indicating someone had been dragged, leading from the house through a cornfield to an area under a pecan tree. There was an area "beat out underneath the pecan tree where it appeared some activity had taken place." The investigators noted that the front porch light had been broken out, and, entering the house, noted that the bed had vegetable debris on it, including a pecan leaf on the pillow.

Several months after his arrest, the defendant called the sheriff and admitted that he had killed the victim with his shotgun.

a. The defendant contends that the evidence is insufficient to support the murder verdict. He points to evidence tending to show

that the victim, and not the defendant, was the real troublemaker, and that the victim had threatened to kill the defendant. The defendant testified that he shot the victim only when it appeared to him that the victim was reaching for a weapon, and he therefore acted in self-defense. At most, he argues, he is guilty of voluntary manslaughter.

We conclude that the evidence, considered in the light most favorable to the state, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

b. He argues next that the evidence is insufficient to support his conviction for rape and aggravated sodomy. He relies on the lack of notable physical harm such as lacerations or bruises on the wife's body, on the fact that no sperm or seminal fluid was discovered when she was examined by a doctor, and on the fact that she did not immediately report these offenses.

Other than the penetration of the female sex organ by the male sex organ, the infliction of physical injury is not an element of the offense of rape. OCGA § 16-6-1; *Searcy v. State*, 158 Ga. App. 328 (2) (280 SE2d 161) (1981).

The crime of rape is completed when, forcibly and against the will of the victim, the defendant penetrates the female sex organ with his male sex organ. Ejaculation is not an element of rape, and "[i]t is not necessary that the examining physician find semen in the victim's body. [Cit.]" *Perry v. State*, 154 Ga. App. 385, 386 (268 SE2d 747) (1980).

The lack of an "immediate outcry," is a relevant circumstance. However, the jury was entitled to determine from the evidence in this case that the wife's delay in reporting the rape and aggravated sodomy was the result of her fear of the defendant, and did not indicate subsequent fabrication.

The evidence supports the defendant's conviction for these offenses. *Jackson v. Virginia*, supra.

2. We find no error in the denial of severance. *Childs v. State*, 257 Ga. 243 (1) (357 SE2d 48) (1987).

3. The defendant complains of a number of instances of prosecutorial misconduct. However, he did not object at trial to any of these alleged instances of misconduct. Many of his examples of alleged misconduct (e.g., referring to the sheriff in closing argument as "your" sheriff), were not objectionable. Moreover, some of the matters that could have been objected to, as, for example, certain instances of cross-examination, see *Cargill v. State*, 255 Ga. 616, 631 (17 a) (340 SE2d 891) (1986), did not amount to prosecutorial misconduct; they were merely matters that could have been, but were not, objected to.

See *Spivey v. State*, 253 Ga. 187, 191 (319 SE2d 420) (1984). We find no reversible error here. *Davis v. State*, 255 Ga. 598, 610 (17) (340 SE2d 869) (1986).

4. The trial court did not abuse its discretion by granting a request for excusal to a 72-year-old juror with a heart condition who had a doctor's appointment the next day in another town. Compare OCGA § 15-12-1 (b).

5. Inasmuch as the defendant is white, the trial court did not err by declining to address the defendant's claim that the prosecutor discriminated against blacks in the exercise of his peremptory challenges. "In *Lockhart v. McCree*, 476 U. S. 162 (106 SC 1758, 1764-65, 90 LE2d 137) (1986), the Supreme Court refused to extend the fair-cross-section requirement to petit juries, and we decline to do so here." *Lindsey v. Smith*, 820 F2d 1137, 1145 (11th Cir. 1987). Under *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986), a defendant may raise an equal-protection claim of discrimination only with respect to the removal from the venire of members of his *own* race. *Pope v. State*, 256 Ga. 195, 202 (7 f) (345 SE2d 831) (1986).

6. During its direct examination of G.B.I. agent Sweat, the state asked, "[D]id you appear before the grand jury of this county and testify regarding this particular indictment, sir?"

The defendant objected and moved for a mistrial. The trial court sustained the objection, denied the motion for mistrial, and instructed the jury to disregard the question. During its charge to the jury, the court gave the usual instruction that the indictment is not evidence, but is merely the manner in which charges are brought before the court for trial.

It is not clear from the record why the state asked the question or what its relevance may have been, but any possible error was cured by the court's response to the defendant's objection.

7. The state also asked agent Sweat a question concerning what the victim's wife had said to him after she was brought to the Appling County Sheriff's office. Sweat answered, "I explained again who I was, told her that we needed to talk with her about the situation, and asked her to tell me what had happened. The initial statement she gave was rehearsed."

The defendant objected to the last sentence of this answer on the ground that whether or not the initial statement was rehearsed was a question for the jury and that the witness was not qualified to give such an opinion. The state conceded the validity of the objection and offered to rephrase the question. The questioning continued with no further objection or motion in this regard by the defendant.

He now claims the answer violated the rule set forth in *Fordham v. State*, 254 Ga. 59 (325 SE2d 755) (1985), prohibiting the giving of opinions by law enforcement officers concerning an "ultimate fact" to

be decided by the jury. Pretermitting whether the statement given here was such an opinion, the difference between this case and *Fordham* is that Fordham's objection was overruled and the testimony was allowed over his objection, whereas here the defendant obtained all the relief he asked for. We find no error.

8. In the preceding divisions of this opinion, we have addressed those contentions of error relating to the conviction. Having found them to be without reversible merit, the conviction is affirmed. The dispositive contention relating to the death sentence is contained in the defendant's eighth enumeration of error, and concerns the trial court's erroneous limitation of defense voir dire on the question of possible bias in favor of the death penalty.

The defendant sought to ask questions of prospective jurors relating to possible bias in favor of the death penalty and whether the prospective jurors would be capable of considering penalties other than death. The court ruled "that no question's proper to ask a juror touching his feelings on the imposition of the death penalty if he answers . . . the fourth of statutory questions [contained in OCGA § 15-12-164, viz: 'Are you conscientiously opposed to capital punishment?'], if he answers no — then that as to that juror, that completes his examination as to the death penalty question, and then the attorney can go into other questions not having to do with the death penalty . . . any other questions touching on the death penalty would be improper. . . ."

The issue here is not the extent to which death-qualification questions should have been asked by the court rather than by the attorneys. See Rule 10.1 of the Uniform Rules of the Superior Courts, 253 Ga. 799, 823-24. It is, rather, the extent to which the parties are entitled to probe for bias in *favor* of the death penalty as well as for bias *against* it. See *Childs v. State*, 257 Ga. 243 (7) (357 SE2d 48) (1987).

The trial court erred by ruling that a negative answer to the fourth statutory question was sufficient to qualify a prospective juror in all respects regarding his attitudes toward the death penalty. See *Jefferson v. State*, 256 Ga. 821 (4) (353 SE2d 468) (1987).

As we have stated: "A criminal defendant is entitled to an impartial jury by the Sixth Amendment to the U. S. Constitution. A juror who has made up his mind prior to trial that he will not weigh evidence in mitigation is not impartial. [Such a] juror's views on capital punishment would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' *Wainwright v. Witt*, [469 U. S. ___ (105 SC 844, 83 LE2d 841) (1985)]." *Pope v. State*, 256 Ga. 195, 202 (345 SE2d 831) (1986). In other words, "an inability fairly to consider a life sentence is just as disqualifying as an inability fairly to consider a death sentence."

*Childs v. State*, supra, 257 Ga. at 249.

The trial court's limitation on voir dire deprived the defendant of an opportunity to determine whether prospective jurors were impartial on the question of sentence.[2]

This error does not affect the conviction. Any undisclosed bias here would have related to the issue of sentence, not to guilt or innocence. "The death sentence, however, must be set aside." *Pope v. State*, supra.

9. The evidence was sufficient to support a finding that the offense of murder was committed while the defendant was engaged in the commission of the offenses of rape and kidnapping with bodily injury. OCGA § 17-10-30 (b) (2); *Davis v. State*, 255 Ga. 588, 593 (340 SE2d 862) (1986). It is not necessary that the victim of the aggravating felonies be the murder victim. See, e.g., *Cook v. State*, 255 Ga. 565 (16) (340 SE2d 891) (1986). It is permissible to find both rape and kidnapping with bodily injury as aggravating circumstances even if the rape is the bodily injury of the kidnapping. *Waters v. State*, 248 Ga. 355, 368 (11) (283 SE2d 238) (1981). It is permissible to use as a statutory aggravating circumstance an offense for which the defendant has not been indicted or convicted. *Putman v. State*, 251 Ga. 605 (14) (308 SE2d 145) (1983).

10. The remaining enumerations of error need not be addressed. The defendant's conviction for murder, rape and aggravated sodomy is affirmed. His death sentence is vacated, and the case is remanded for resentencing on the murder count of the indictment.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED FEBRUARY 12, 1988.

*Luman C. Earle*, for appellant.

*Glenn Thomas, Jr.*, District Attorney, *Michael J. Bowers*, Attorney General, *Dennis R. Dunn*, Assistant Attorney General, for appellee.

---

[2] For example, one juror who responded to the query whether she was conscientiously opposed to the death penalty responded, "I would vote for it." The defendant was not allowed to ascertain whether or not she meant that she would vote for it automatically if the defendant were convicted, without weighing possible evidence in mitigation.