## 44877. BLANKENSHIP v. THE STATE.
### (365 SE2d 265)

WELTNER, Justice.

This is the third appearance of this death penalty case. In *Blankenship v. State*, 247 Ga. 590 (277 SE2d 505) (1981), we affirmed the defendant's convictions for the offenses of felony murder and rape, but vacated the death sentence and remanded the case for resentencing. In *Blankenship v. State*, 251 Ga. 621 (308 SE2d 369) (1983), we vacated the death sentence imposed at the resentencing trial. Blankenship once again has been sentenced to die. Finding no error in the latest proceedings, we now affirm.[1]

1. "Death-qualification" of prospective jurors is not unconstitutional. *Lockhart v. McCree*, 476 U. S. ___ (106 SC 1758, 90 LE2d 137) (1986); *Jefferson v. State*, 256 Ga. 821 (4) (353 SE2d 468) (1987); *Hicks v. State*, 256 Ga. 715 (10) (352 SE2d 762) (1987).

2. Blankenship contends that even if such practice is constitutionally acceptable, the trial court nonetheless erred in its excusal of two jurors whose voir dire answers failed to meet the test for excusal. See *Alderman v. State*, 254 Ga. 206 (4) (327 SE2d 168) (1985). We need not consider this contention. Rule 10.1 of the Georgia Uniform Rules for the Superior Courts plainly states: "Failure to object to the

---

[1] The defendant was sentenced to death on June 12, 1986. He filed a motion for new trial on July 11, and amendment thereto on September 22, 1986. The motion was denied on March 26, 1987. The case was docketed in this court on July 23, 1987, and the case was argued orally September 22, 1987.

court's ruling on whether or not a juror is qualified shall be a waiver of any such objection." 253 Ga. at 824. Blankenship did not object to the court's ruling on either of the two jurors he now claims were excused improperly.

3. Blankenship also complains of the court's excusal of three prospective jurors under the provisions of OCGA § 15-12-1 (a), which provides: "Any person who shows that he will be engaged during his term of jury duty in work necessary to the public health, safety, or good order or who shows other good cause why he should be exempt from jury duty may be excused by the . . . court . . . ."

The defendant did not object to the court's ruling excusing two of these three prospective jurors. The remaining juror was excused at her request on the ground that she was scheduled to attend a legal assistance workshop offered "this one and only time" for a non-profit organization of which she was the president. We find no abuse of discretion. Compare *Ingram v. State*, 253 Ga. 622 (1 e) (323 SE2d 801) (1984).

4. Blankenship complains that notwithstanding his previous requests for exculpatory information under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), he was not informed that the autopsist had expressed an opinion that this case appeared to be similar to a case involving Gary Nelson, see *Nelson v. State*, 247 Ga. 172 (274 SE2d 317) (1981), and that a detective's notes of the autopsy referred to the autopsist's observations. Noting that he has long contended that another person was present in the victim's apartment, Blankenship contends the state's delay in providing exculpatory information about the autopsist's observations requires the reversal of his death sentence. We disagree.

The defendant testified at this sentencing trial that he knew Gary Nelson and that Gary Nelson was *not* the person in the victim's apartment. In these circumstances, the mere fact that the autopsist noticed some similarities between the two cases could not be exculpatory of Blankenship's guilt. See *Castell v. State*, 250 Ga. 776, 782 (301 SE2d 234) (1983). Moreover, his claim for relief relates only to the sentence, and he learned of this evidence prior to the re-sentencing trial. Inasmuch as it was available to him prior to trial, it could not have been "suppressed." Blankenship has failed to show that the disclosure came so late as to deny him a fair trial. See *Parks v. State*, 254 Ga. 403, 407 (3) (330 SE2d 686) (1985).

5. Blankenship complains of the court's refusal to hear his challenge to the array of the grand jury, and of the court's failure to complete a grand jury certificate pursuant to Rule II (A) (6) of the Unified Appeal Procedure. See 252 Ga. at A-17.

(a) Rule II (A) (6) was promulgated several years after Blankenship's conviction was affirmed. It is therefore inapplicable to the

grand jury list in this case. *Parks v. State,* supra at 408 (fn. 4). The trial court did not err by failing to complete a grand jury certificate.

(b) Nor did the trial court err by refusing to consider Blankenship's challenge to the array of the grand jury, as there was no challenge to the grand jury array prior to the original trial. Because his conviction long since has been affirmed, this challenge comes too late. *Alderman v. State,* 254 Ga. 206 (1) (327 SE2d 168) (1985). *Vasquez v. Hillery,* 474 U. S. ___ (106 SC 617, 88 LE2d 598) (1986), on which Blankenship relies, is inapposite. Unlike Blankenship, Hillery made timely challenges to the array of his grand jury.

6. Blankenship was not allowed to ask on voir dire if a prospective juror had "any preconceived notion as to what sort of case the death penalty should be imposed in." He contends that the court improperly limited his voir dire examination. A defendant has the right to a voir dire examination that is "broad enough to allow the parties to ascertain the fairness and impartiality of the prospective jurors." *Curry v. State,* 255 Ga. 215, 218 (336 SE2d 762) (1985). He is "entitled to probe for bias in *favor* of the death penalty as well as for bias *against* it." *Skipper v. State,* 257 Ga. 802, 806 (364 SE2d 835) (1988). But neither the defendant nor the state has the right simply to outline the evidence and then ask a prospective juror his opinion of that evidence. Nor is it permissible to ask a juror to describe the *kind* of case that, in the juror's opinion, would warrant a death sentence. We find no abuse of discretion. *Curry v. State,* supra; *Spivey v. State,* 253 Ga. 187, 193 (319 SE2d 420) (1984).

7. Photographs of the crime scene and of the victim were properly admitted in evidence at this resentencing trial. *Conklin v. State,* 254 Ga. 558 (12) (331 SE2d 532) (1985).

8. Blankenship contends that his pre-trial statement to law enforcement officers should not have been admitted in its entirety because it contained a reference to sodomy, an offense for which he was acquitted. Compare *Fugitt v. State,* 256 Ga. 292 (1 d) (348 SE2d 451) (1986).

The only possible reference to sodomy occurred in the following portion of his statement: "When I put her on the bed and took her clothes off I was drunk I guess. I said I may as well go ahead and get some pleasure. That's when I had the relationship with her. As far as I know I thought I [had entered her vagina]."

Rape was one of the statutory aggravating circumstances in the case. See OCGA § 17-10-30 (b) (2). Blankenship's statement was an admission that he raped the victim and a denial that he committed sodomy. Nothing in the statement was offered to prove the commission of a crime for which the defendant had been acquitted (as he contends), and the trial court did not err by admitting the entire statement in evidence.

9. The trial court is not required to enforce the rule of sequestration until the presentation of evidence has begun. OCGA § 24-9-61; *Hughes v. State*, 128 Ga. 19 (1) (57 SE 236) (1907). We find no abuse of discretion in the trial court's enforcement of the rule in this case.

10. The defendant was represented throughout the trial by two appointed attorneys who twice before have succeeded in obtaining reversals of Blankenship's death sentences on appeal. Nonetheless, he contends that the trial court should have appointed an additional attorney, whose sole function would have been to assist him in responding to the court's inquiry (under the Unified Appeal Procedure) concerning his satisfaction with his trial attorneys.

The Unified Appeal Procedure affords a death-penalty defendant "numerous opportunities to raise questions or objections concerning his counsel's assistance. . . ." *Sliger v. State*, 248 Ga. 316, 319 (282 SE2d 291) (1981). We find no error in the proceedings under the Unified Appeal Procedure.

11. There is no merit to Blankenship's general constitutional attacks on Georgia death penalty procedures. His contention that the *Witherspoon* error that infected the first trial should have resulted in the reversal of his conviction as well as his sentence has been answered contrary to his position in the first appeal of this case. *Blankenship v. State*, supra, 247 Ga. at 596.

12. The jury found that the offense of murder involved the contemporaneous commission of the offense of rape and that the offense of murder was "horrible and inhuman in that it involved aggravated battery and depravity of mind." See OCGA § 17-10-30 (b) (2) and (b) (7).

(a) The evidence supports the jury's § b (2) finding. As for the § b (7) aggravating circumstance, we have observed that it "consists of two major components, the second of which has three sub-parts, as follows: (I) The offense of murder was outrageously or wantonly vile, horrible or inhuman (II) in that it involved (A) aggravated battery to the victim, (B) torture to the victim, or (C) depravity of mind of the defendant." *Hance v. State*, 245 Ga. 856, 860 (268 SE2d 339) (1980). "[T]he evidence must be sufficient to satisfy the first major component of the statutory aggravating circumstance and at least one subpart of the second component. . . ." Id. at 861.

(b) In this case, the jury's verdict did not contain all of the language of the first component of § b (7). However, the defendant voiced no objections to the form of the verdict, and, as we have noted, all the various words of the first component "have essentially the same meaning. . . ." *Hance v. State*, supra at 861. Therefore, absent any objection as to the form of the verdict, we find no error. *Romine v. State*, 251 Ga. 208 (7) (305 SE2d 93) (1983).

(c) The evidence supports the jury's § b (7) finding. *Allen v.*

*State,* 253 Ga. 390 (6) (321 SE2d 710) (1984); *Patrick v. State,* 247 Ga. 168, 170 (274 SE2d 570) (1981).

13. Blankenship's death sentence is not excessive or disproportionate, simply because he was convicted of *felony* murder rather than malice murder. *Jefferson v. State,* 256 Ga. 821, 829 (353 SE2d 468) (1987). The evidence shows that Blankenship killed the victim. Compare *Enmund v. Florida,* 458 U. S. 782 (102 SC 3368, 73 LE2d 1140) (1982).

Reviewing similar cases and the crime, we do not find that the sentence of death is excessive or disproportionate. OCGA § 17-10-35 (c) (3). Nor do we find the sentence to have been imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 19, 1988 —
RECONSIDERATION DENIED MARCH 9, 1988.

John W. Hendrix, Penny J. Haas, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.

APPENDIX.

*Crawford v. State,* 257 Ga. 681 (362 SE2d 201) (1987); *Parker v. State,* 256 Ga. 543 (350 SE2d 570) (1986); *Devier v. State,* 253 Ga. 604 (323 SE2d 150) (1984); *Allen v. State,* 253 Ga. 390 (321 SE2d 710) (1984); *Felker v. State,* 252 Ga. 351 (314 SE2d 621) (1984); *Brown v. State,* 250 Ga. 66 (295 SE2d 727) (1982); *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981); *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598 (272 SE2d 475) (1980); *Cape v. State,* 246 Ga. 520 (272 SE2d 487) (1980); *Thomas v. State,* 245 Ga. 688 (266 SE2d 499) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979); *Davis v. State,* 242 Ga. 901 (252 SE2d 443) (1979); *Johnson v. State,* 242 Ga. 649 (250 SE2d 394) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Gibson v. State,* 236 Ga. 874 (226 SE2d 63) (1976).