## S91P1566. BENNETT v. THE STATE.
### (414 SE2d 218)

FLETCHER, Justice.

This is a death penalty case. Jack Bennett got married on June 24, 1989. On the morning of June 28, 1989, Bennett stabbed his wife as she lay sleeping. The autopsist testified at trial that he had counted over 100 stab wounds on the victim's body. At least two wounds penetrated to her heart. Although her stab wounds would ultimately have proven fatal, they were not immediately fatal. Bennett, feeling the victim "wouldn't die" after having been stabbed over 100 times, also used a claw hammer to "cave in" the left side of her head.

The defendant contended he suffered from the delusion that his wife and a third party were plotting to kill him and he killed her in self-defense. The state theorized that Bennett had killed the victim in a jealous rage after discovering mementos of an affair which she had ended not long before her marriage to the defendant.

The evidence supports the defendant's conviction for murder. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[1]

1. Bennett first contends he is entitled to a new trial because one member of the jury was a convicted felon. This fact was discovered by the defense during the sentencing phase of the trial, but was not brought to the attention of the court until several weeks after the trial.

(a) Bennett contends the juror intentionally misled him during voir dire.

Prior to the oral voir dire examination, the prospective juror filled out a written questionnaire prepared primarily by the defense. Question 24 asked the juror:

> Have you ever been arrested? If yes, when? On what charges. Where? Were you found not guilty? If not, what was the sentence?

The juror answered, "Yes, 1982 in Valdosta, DUI." He did not dis-

---

[1] The crime was committed on June 28, 1989. The defendant was arrested the same day. The trial began May 29, 1990 and ended June 13, 1990. A motion for new trial was timely filed and denied after hearing on July 2, 1991. The case was docketed in this court on August 22, 1991 and argued orally on October 21, 1991.

close his 1984 felony conviction and probated sentence for the offense of operating a motor vehicle after having been declared a habitual violator. See OCGA § 40-5-58 (c). At the hearing on the motion for new trial, the juror explained that he believed once he "fulfilled his obligations of probation without . . . any other violations that the case was to be dismissed or off his record so to speak." Being called for jury service reinforced his belief that his habitual-violator conviction had been removed from his record.

Although the juror's belief was incorrect (he had not been sentenced under the first offender act, see OCGA § 42-8-60 et seq.), the trial court was authorized to conclude that he did not intentionally answer the questionnaire untruthfully. *Isaacs v. State*, 259 Ga. 717 (44 e) (386 SE2d 316) (1989).

(b) Bennett further contends the court restricted his voir dire examination on this issue. We do not agree. The court simply stated at the outset of the voir dire examination that the parties should not repeat questions that already had been answered on the questionnaire. The court did not preclude follow-up questions, or questions about matters not answered on the questionnaire.

(c) Bennett argues that in any event, he is entitled to a new trial because the jury was "illegally constituted," and its verdict was "void."

There is no statute specifically prohibiting jury service by one who has been convicted of a felony. Compare OCGA § 15-12-60. (Person convicted of a felony is incompetent to serve as grand juror.) However, our cases have found such disqualification based on the common law. See, e.g., *Williams v. State*, 12 Ga. App. 337, 338-339 (77 SE 189) (1913):

> At common law, one who was found guilty of larceny was "infamous," and, by reason of that infamy, he was disqualified from jury service. . . . [T]he right of jury trial . . . in Georgia . . . must be governed by the same rules. . . .

But such disqualification is not necessarily permanent,

> because it has sometimes happened that men who afterward became model citizens had in their youth committed offenses which were fully expiated or atoned for by a subsequent course of exemplary rectitude. [Ibid.]

In this case, the juror had no felony convictions aside from his traffic-offense habitual-violator conviction several years before this trial. Assuming that he would have been excusable for cause if he had been timely challenged, we do not think his crime was so "infamous" or so recent that he was subject to a challenge propter delictum for

the first time after trial, *Wright v. Davis*, 184 Ga. 846, 852 (193 SE 757) (1937), at least where, as here, the defense learned of the possible disqualification during trial and did not immediately raise the issue.

(d) Finally, we do not agree that the trial court should have appointed additional counsel to litigate the issue of trial counsel's effectiveness merely because the trial court ruled against the defendant on procedural grounds. Cf. *Todd v. State*, 261 Ga. 766 (13) (410 SE2d 725) (1991).

2. The trial court did not err by excusing three prospective jurors on grounds of hardship, OCGA § 15-12-1 (a); *Blankenship v. State*, 258 Ga. 43 (3) (365 SE2d 265) (1988), or by excusing a fourth prospective juror who had serious difficulty speaking and understanding English. *Robinson v. State*, 258 Ga. 279, 280 (2) (368 SE2d 513) (1988).

3. The trial court's rulings on the qualifications of the prospective jurors were "within the deference due the trial judge's determination." *Jefferson v. State*, 256 Ga. 821, 824 (2) (353 SE2d 468) (1987).

4. The trial court did not abuse its discretion by admitting in evidence photographs of the injuries inflicted on the victim by the defendant. *Hicks v. State*, 256 Ga. 715 (13) (352 SE2d 762) (1987). Compare *Brown v. State*, 260 Ga. 153, 158 (391 SE2d 108) (1990) (Fletcher, J., dissenting).

5. Nor did the court err by allowing in evidence exhibits from the crime scene, some of which were bloody and allegedly malodorous. *Todd v. State*, supra, 261 Ga. at (9); *Cape v. State*, 246 Ga. 520 (6) (272 SE2d 487) (1980).

6. Statements made before her death by the victim about her adulterous relationship with someone other than the defendant were relevant to prove the defendant's motive for committing murder and were properly admitted over the defendant's hearsay objection. OCGA § 24-3-8.

7. Bennett raises various complaints about the guilt-phase charge:

(a) Bennett requested a charge on insanity which placed the burden of proving sanity beyond a reasonable doubt on the prosecution. The court did not err by declining to deliver the defendant's requested instruction. As the court correctly instructed the jury, the defendant bears the burden of proving insanity by a preponderance of the evidence. *Brown v. State*, 250 Ga. 66, 70 (1) (295 SE2d 727) (1982).

(b) Bennett's requested guilt-phase charges numbered 2, 6 and 23 were covered in substance by the "charge actually given," and the court's refusal to give these requested charges was not error. *Pruitt v. State*, 258 Ga. 583, 588 (13) (373 SE2d 192) (1988).

(c) Relying on *Brown v. State*, 228 Ga. 215, 219 (3) (184 SE2d 655) (1971), Bennett contends the trial court erred by refusing to charge the jury that:

> the act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind to warrant a finding of insanity on the part of the defendant.

The court delivered a charge on the insanity defense.

> This was a sufficient instruction. To charge further [as requested by the defendant] . . . would, under the circumstances, have been argumentative, and the request was properly refused. [*Freeman v. State*, 132 Ga. App. 742, 744 (209 SE2d 127) (1974).]

See also *Duck v. State*, 250 Ga. 592, 596 (2 a) (300 SE2d 121) (1983).[2]

(d) For the same reason, the court did not err by refusing to deliver Bennett's request to charge number 7.

(e) During the charge conference, the court told the defendant it would deliver the pattern charge concerning the effect of a verdict of guilty but mentally ill as required by OCGA § 17-7-131 (b) (3) (B). However, although the court instructed the jury about the effect of a verdict of not guilty by reason of insanity, as set forth in OCGA § 17-7-131 (b) (3) (A), and about the effect of a verdict of guilty but mentally retarded, as set forth in OCGA § 17-7-131 (b) (3) (C), the court inadvertently omitted to charge OCGA § 17-7-131 (b) (3) (B) concerning the effect of a verdict of guilty but mentally ill.

At the conclusion of the charge, the court asked the defendant's attorney if the court had omitted "anything that I told you I would charge. . .?" The defendant's attorney answered, "Not that I recall, no." Because the defendant failed to object to the court's omission to charge, this claim of error has not been preserved for review. *Thomas v. State*, 234 Ga. 615, 618 (216 SE2d 859) (1975). (Overruled on other grounds in *White v. State*, 243 Ga. 250 (253 SE2d 694) (1979).)

(f) The evidence does not support the defendant's 24th request to charge, and the court did not err by refusing to deliver it. *Pruitt v. State*, supra, 258 Ga. at 588.

(g) We find no insufficiency in the court's instructions to the jury about the applicability of the defendant's insanity defense to the possible lesser included offense of voluntary manslaughter as well as to

---

[2] We note that Brown had shot and killed a woman she believed was committing adultery with her husband. When *Brown* was decided, her delusion, if true, would have justified the crime. Such is no longer the law. *Burger v. State*, 238 Ga. 171 (1) (231 SE2d 769) (1977).

murder (even assuming this issue is not mooted by the jury's rejection of the insanity defense and verdict of guilty of murder).

8. The defendant moved for a mistrial when the prosecutor referred in his opening statement to the victim and her family. The denial of mistrial was not error. *Payne v. Tennessee,* 501 U. S. ____ (111 SC 2597, 115 LE2d 720) (1991).

9. It was not error to play a videotape of the crime scene at the sentencing phase of the trial. *Foster v. State,* 258 Ga. 736 (7) (374 SE2d 188) (1988).

10. Bennett raises numerous complaints about the sentencing-phase charge:

(a) Bennett's 4th request to charge was an argumentative exegesis of matters covered by the court's charge. The refusal to deliver this request was not an abuse of discretion.

(b) The trial court did not commit reversible error by refusing the defendant's request to instruct the jury to assume that he would spend the rest of his life in prison if sentenced to life imprisonment and that he would be electrocuted if sentenced to death. *Cohen v. State,* 257 Ga. 544 (3) (361 SE2d 373) (1987).

(c) The court fully and sufficiently instructed the jury about the statutory aggravating circumstances and the state's burden of proof. Thus the defendant's requests to charge numbered 6, 7, 8, 9, 10, 11 and 13 were covered by the court's charge. *Pruitt v. State,* supra.

(d) The court's instructions sufficiently defined and explained mitigating circumstances. There was no necessity to enumerate specific mitigating circumstances. *Taylor v. State,* 261 Ga. 287 (11) (404 SE2d 255) (1991). There was no error in the refusal to deliver defense requests to charge numbered 14, 15, 16, 17, 19, 20, 21, 22 and 23.

(e) The court's charge informed the jury that it could impose a life sentence whether or not it found the presence of mitigating circumstances. Thus, defense requests numbered 24, 25 and 26 were covered by the court's charge. *Pruitt v. State,* supra.

(f) The court defined "reasonable doubt" at the guilt phase of the trial. There was no necessity to redefine it at the sentencing phase. *Putman v. State,* 251 Ga. 605 (13) (308 SE2d 145) (1983). The refusal to deliver Bennett's 18th request to charge was not error.

(g) In Georgia, "the jury is not informed of the consequences of its inability to reach a verdict as to sentence." *Romine v. State,* 256 Ga. 521, 525 (350 SE2d 446) (1986). The trial court did not err by refusing to deliver Bennett's 27th request to charge.

(h) The trial court did not err by insisting on its verdict forms rather than those urged by the defendant, as contained in his 28th and 30th requests to charge.

11. Bennett, who is white, argues that the prosecutor's decision to seek a death sentence against him was racially motivated. He bases

this argument on the prosecutor's refusal (absent new evidence) to extend Bennett's deadline for entering a guilty plea in exchange for the state's recommendation of a life sentence. The prosecutor explained that he insisted on treating every defendant equally to avoid a charge of racial discrimination. There is no merit to this enumeration of error.

12. A few months after his arrest, the defendant requested that he be allowed to visit the victim's gravesite in the company of her two daughters and the sheriff. He now contends his Sixth Amendment right to counsel was violated when, during this requested visit, members of the victim's family questioned him about the crime while the sheriff listened. Since there is nothing in the trial transcript to indicate that any statements made by the defendant at the gravesite were admitted in evidence at trial, there is nothing to review here, even assuming the defendant did not waive his right to counsel by initiating this visit.

13. There was no error in the denial of the defendant's request to dress the three courtroom bailiffs in civilian clothing rather than in their uniforms. Compare *Zant v. Gaddis*, 247 Ga. 717 (2) (279 SE2d 219) (1981).

14. Bennett contends the court should have declared a mistrial sua sponte when the state, during its closing argument, referred to the defendant's direct testimony about his decision to seek a jury trial. Pretermitting whether the state's argument was even objectionable, there certainly was no "manifest necessity" for a mistrial not sought by the defendant. See, e.g., *Tieu v. State*, 257 Ga. 281, 284-287 (358 SE2d 247) (1987) (Smith, J., dissenting).

15. The court's instructions defining the § b (7) aggravating circumstance were not erroneous. OCGA § 17-10-30 (b) (7). See *West v. State*, 252 Ga. 156, 161 (Appendix) (313 SE2d 67) (1984). The evidence supports the jury's § b (7) finding. *Taylor v. State*, supra, 261 Ga. at (13). The evidence also supports the jury's § b (2) finding of aggravated battery. Id. Compare *Davis v. State*, 255 Ga. 588 (3 c) (340 SE2d 862) (1986).

16. We do not find that Bennett's death sentence was imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The sentence of death imposed in this case is neither excessive nor disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. All the Justices concur, except Weltner, P. J., and Benham, J., who dissent; Sears-Collins, J., not participating.*

APPENDIX.

*Taylor v. State*, 261 Ga. 287 (13) (404 SE2d 255) (1991); *Hall v. State*, 259 Ga. 412 (383 SE2d 128) (1989); *Jefferson v. State*, 256 Ga. 821 (353 SE2d 468) (1987); *Davis v. State*, 255 Ga. 598 (340 SE2d 869) (1986); *Roberts v. State*, 252 Ga. 227 (314 SE2d 83) (1984); *Berryhill v. State*, 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State*, 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State*, 236 Ga. 339 (223 SE2d 703) (1976); *Moore v. State*, 233 Ga. 861 (213 SE2d 829) (1975).

BENHAM, Justice, dissenting.

The majority opinion, in Division 3, deals with appellant's complaints regarding the death-qualification of the jury with the summary conclusion that the rulings of the trial court were within the deference due that court's determination. Because I believe those rulings were incorrect, I must dissent.

Appellant has enumerated as error the trial court's refusal to strike four prospective jurors for cause on the basis of their partiality toward the death penalty. While all four of the prospective jurors expressed opinions which leave in serious doubt their ability to decide fairly the issue of punishment, two of the four (Wiley and McKoy) made it abundantly clear that they were of the firm opinion that a conviction for malice murder called for the death penalty no matter what the defense might produce in mitigation.

"A criminal defendant is entitled to an impartial jury by the Sixth Amendment to the U. S. Constitution. A juror who has made up his mind prior to trial that he will not weigh evidence in mitigation is not impartial. Such a juror's views on capital punishment would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' [Cit.]" [Cit.] In other words, "an inability fairly to consider a life sentence is just as disqualifying as an inability fairly to consider a death sentence." [Cit.] [*Skipper v. State*, 257 Ga. 802 (8) (364 SE2d 835) (1988).]

The State contends that these jurors showed that they were not disqualified because they agreed that they would obey the trial court's instruction to consider the mitigating evidence. Both jurors, however, testified that although they would consider the evidence, there was nothing which the defense could show that would make them vote for

life imprisonment if the evidence showed the defendant was guilty of malice murder. This court held in *Cofield v. State*, 247 Ga. 98 (2) (274 SE2d 530) (1981), that

> [i]t is not sufficient that the juror be willing to "consider" the death penalty if he or she is committed to automatically vote against the death penalty after having "considered" it.

Given the holding in *Skipper*, supra, the converse of the holding in *Cofield* should be true: it is not sufficient that the juror be willing to "consider" evidence in mitigation if he or she is committed to vote automatically for the death penalty after having "considered" the mitigating circumstances.

The best the State was able to do in attempting to rehabilitate jurors Wiley and McKoy was to get them to state that they would obey the trial court's instructions and consider the evidence in mitigation. Nonetheless, each of them also stated that if the evidence showed the defendant to be guilty, there was nothing which would be sufficiently mitigating to persuade them to vote against the death penalty. I am convinced that those jurors indicated clearly that they had made up their minds, that they would not fairly weigh evidence in mitigation, that their views on capital punishment would prevent or substantially impair the performance of their duties as jurors in accordance with their instructions and their oaths. Under the authorities cited above, appellant was entitled to have jurors Wiley and McKoy excused for cause, and the trial court's refusal to do so requires a new trial on the issue of punishment.

I am authorized to state that Presiding Justice Weltner joins this dissent.

DECIDED MARCH 13, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992.

*Kenneth W. Krontz, Edwards & McLeod, Jennifer McLeod,* for appellant.
*David McDade, District Attorney, Michael J. Bowers, Attorney General, Robert D. McCullers, Staff Attorney,* for appellee.